*Tenae Smith et al. v. Westminster Management, LLC, et al.*, No. 2508, September Term 2019.

**LANDLORD-TENANT LAW—RESIDENTIAL LEASES—MD. CODE, REAL PROPERTY ARTICLE § 8-208—MEANING OF "RENT" IN REAL PROP. § 8-208(D)(3) AND REAL PROP. § 8-401**

Md. Code Real Prop. § 8-208(d)(3) prohibits a residential lease from providing for a penalty for the late payment of rent "in excess of 5% of the rent due for the rental period for which the payment was delinquent." For the purposes of § 8-208, "rent" means "the periodic sum owed by the tenant for use or occupancy of the premises."
*See Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 425 (2016).

**LANDLORD-TENANT LAW—RESIDENTIAL LEASES—MD. CODE, REAL PROPERTY ARTICLE § 8-401(E)(IV)—MEANING OF "RENT" IN SUMMARY EJECTMENT PROCEEDINGS FOR RESIDENTIAL LEASES**

Md. Code Real Prop. § 8-401(e)(2)(iv) provides that, in summary ejectment actions involving "a residential tenancy," the court may enter judgment "in favor of the landlord for the amount of rent and late fees determined to be due together with costs of the suit if the court finds that the residential tenant was personally served with a summons." For the purposes of § 8-401(e)(2)(iv), "rent" means "the periodic sum owed by the tenant for use or occupancy of the premises." *See Lockett v. Blue Ocean Bristol*, LLC, 446 Md. 397, 425 (2016).

**LANDLORD-TENANT LAW—RESIDENTIAL LEASES—MD. CODE, REAL PROPERTY ARTICLE § 8-401(E)(2)(IV)—MEANING OF "COSTS OF THE SUIT" IN SUMMARY EJECTMENT PROCEEDINGS FOR RESIDENTIAL LEASES**

Md. Code Real Prop. § 8-401(e)(2)(iv) provides that, in summary ejectment actions involving "a residential tenancy," the court may enter judgment "in favor of the landlord for the amount of rent and late fees determined to be due together with costs of the suit if the court finds that the residential tenant was personally served with a summons." For the purposes of § 8-401(e)(2)(iv), "costs of the suit" means fees charged and collected by the District Court clerk's office and fees charged and collected by the sheriffs' departments (when process is served by deputy sheriffs) or by the District Court (when process is served by District Court constables) as shown on the District Court of Maryland Cost Schedule.

Circuit Court for Baltimore City
Case No. 24-C-17-004797

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 2508

September Term, 2019

_____

TENAE SMITH ET AL.

v.

WESTMINSTER MANAGEMENT, LLC
ET AL.

_____

Kehoe,
Arthur,
Leahy,

JJ.

_____

Opinion by Kehoe, J.

_____

Filed:  March 3, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

* At the November 8, 2022 general election, the voters of Maryland ratified a
constitutional amendment changing the name of the Court of Special Appeals of
Maryland to the Appellate Court of Maryland. The name change took effect on December
14, 2022.

This case is complicated. So is this opinion. Here is a table of contents:

Introduction

1. Appellants' Theory of their Case

2. The Relevant Procedural History

3. Recurring Issues:

   A. The Proper Meanings of "Rent" and "Costs" in Md. Code, Real Prop. §§ 8-208 and 8-401
   B. How the Maryland Consumer Debt Collection Act Applies to this Case
   C. How the Maryland Consumer Protection Act Applies to this Case

4. Westminster's Twenty-Seven Arguments in Support of its Motion for Summary Judgment

   A. The Standard of Review
   B. Principles of Statutory Interpretation

5. Westminster's Real Prop. Real Prop. § 8-208 Contentions

6. Westminster's Maryland Consumer Debt Collection Act Contentions

7. Westminster's Maryland Consumer Protection Act Contentions

8. Westminster's Contentions Regarding Appellants' Breach of Contract Claim

9. Westminster's Recoupment Argument

10. Westminster's Contentions Regarding Appellants' Requests for Declaratory and Injunctive Relief

11. The Motions for Class Certification

More than forty-five years ago, the Supreme Court of Maryland[1] expressed concerns about the "likelihood of successful overreaching on the part of the landlord and of coerced adhesion on the part of the tenant" in the context of residential leases. *Univ. Plaza Shopping Ctr., Inc. v. Garcia*, 279 Md. 61, 67 (1977). The Maryland General Assembly has enacted several statutes, codified as title 8 of the Real Property Article, in an effort to provide some degree of protection to tenants while still permitting landlords expedited procedures to evict tenants who fail to pay their rent or otherwise breach their lease agreements. Among the issues presented in this factually and procedurally complex case are the proper meanings of the terms "rent" and "costs" in Md. Code, Real Prop. § 8-208, which prohibits landlords from including or enforcing certain provisions in residential leases; and Real Prop. § 8-401, which establishes an expedited process by which landlords can evict tenants who fail to pay their rent.

Tenae Smith, Howard Smith, Simone Ryer, Dechonne McBride, and Louvinia Sneed appeal from a judgment of the Circuit Court for Baltimore City entered in favor of Westminster Management, LLC and JK2 Westminster, LLC.[2] In their briefs, the parties raise thirteen issues, which we have consolidated into two:

---

[1] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

[2] JK2 Westminster ceased operations on December 20, 2016. Westminster Management LLC is the successor management company. The parties refer to these entities collectively as "Westminster" and we will do so as well. When it is appropriate to

1. Did the circuit court err when it granted Westminster's cross-motion for summary judgment?

2. Did the circuit court err when it denied appellants' second motion for class certification?[3]

---

distinguish between the two appellees, we will refer to them as "Westminster Management" and "JK2."

[3] In their brief, appellants present the following issues:

1. Whether a landlord that charges tenants who are late in paying rent "agent fees" and "summons fees" simultaneously with a 5% late fee violates the 5% late fee cap in Real Property § 8-208(d)(3).

2. Whether a lease that defines all fees as "rent" and systematically misallocates tenant payments first to non-rent charges to coerce faster payment under threat of eviction violates Real Property § 8-208(d)(2).

3. Whether a landlord that charges its tenants fees not authorized by its leases has breached its contracts; and whether a long-belated refund of the overcharge to some tenants, without interest, cures such breach.

4. Whether a landlord that threatens its tenants with summary ejectment if they do not pay non-rent, illegal fees violates the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act.

5. Whether the lower court erred in summarily dismissing Appellants' claim for declaratory relief without a written opinion when Appellants raised clear questions regarding the interpretation and/or validity of Westminster's leases, as well as Appellants' rights under the Real Property and Commercial Law articles.

6. Whether a court may deny a second motion for class certification, based on an amended complaint, by deeming it a motion for reconsideration and thus applying an incorrect legal standard.

Westminster articulates the issues as:

1. Whether the Trial Court correctly entered summary judgment in Westminster's favor where its leases comply with the plain language of RP § 8-208(d)(3)?

- 3 -

When everything is said and done, we will reverse the judgment of the circuit court and remand this case for further proceedings consistent with this opinion. We ask for the reader's patience, fully aware that we will try it before our task is complete.[4]

---

2. Whether the Trial Court correctly entered summary judgment in Westminster's favor where Westminster's definition of "rent" and payment allocation provisions in its leases do not violate Maryland law?

3. Whether the Trial Court correctly entered summary judgment in Westminster's favor as to Appellants' MCDCA claim where Appellants challenge the validity of their underlying debt rather than Westminster's method of collection and there is no evidence that Westminster knowingly attempted to collect a debt it knew it had no right to collect?

4. Whether the Trial Court correctly entered summary judgment in Westminster's favor as to Appellants' MCPA claim where Appellants' claim is admittedly based on Westminster's alleged conduct during their respective tenancies, not at the inception of a lease term?

5. Whether the Trial Court correctly entered summary judgment in Westminster's favor as to Appellants' breach of contract claim where Appellants failed to plead and/or present evidence that Westminster breached their leases or that they suffered any recoverable damages?

6. Whether the Trial Court correctly entered summary judgment in Westminster's favor as to Appellants' request for declaratory and injunctive relief where Appellants, as former tenants, lack standing to pursue injunctive relief and their declaratory judgment claim became moot when they terminated their tenancies?

7.Whether the Trial Court correctly entered summary judgment in Westminster's favor as to Appellants' statutory and breach of contract claims based on Westminster's defense of recoupment where the amounts Appellants owe Westminster far exceed any damages Appellants claim in this lawsuit?

[4] The Homeless Persons Representation Project, Inc. and Civil Justice, Inc. filed a joint amicus curiae brief in support of appellants. The Maryland Multi-Housing Association filed an amicus brief in support of Westminster. Although they approach this

### 1. APPELLANTS' THEORY OF THEIR CASE

"When evaluating a motion for summary judgment, the court must 'construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party.'" *Selective Way Ins. Co. v. Fireman's Fund Ins. Co.*, ___ Md. App. ___, No. 753, Sept. Term, 2021, 2023 WL 1457581 at *12 (Appellate Court of Maryland, Feb. 2, 2023) (quoting *Appiah v. Hall*, 416 Md. 533, 546 (2010)). From the affidavits and other evidence filed in support of, or in opposition to, the parties' motions for summary judgment, a fact-finder could reasonably infer the following:

*Tenae Smith* was a tenant at the Dutch Village Apartments in Baltimore City from 2009 through at least May 19, 2019.[5] *Howard Smith* was a tenant at the Carroll Park Apartments in Baltimore County from 2007 to July 2018. *Simone Ryer* was a tenant at the Whispering Woods Apartments in Baltimore County from December 2016 through December 2017. *Dechonne McBride* was a tenant at Whispering Woods from December 2014 through at least May 19, 2019. Finally, *Louvinia Sneed* was a tenant at the Pleasantview Townhomes in Baltimore City from October 2011 through February 2019.

---

case from different perspectives, the amici have provided us with valuable insights as to the social, economic, and public policy contexts of the parties' appellate contentions.

[5] This was the date that appellants filed their operative complaint in which they alleged that Ms. Smith and Ms. McBride were tenants of properties managed by Westminster.

These properties, as well as several other residential rental properties in Maryland,[6] have been managed by JK2 and then Westminster Management. Neither company has an ownership interest in these properties.

When a tenant fails to make their rent payment on time, and among other remedies, a landlord may file a summary ejectment action in the District Court of Maryland pursuant to Md. Code, Real Prop. § 8-401. Westminster frequently utilized summary ejectment proceedings when its tenants fell behind in their rent. Beginning on June 1, 2014, Westminster had a contract with eWrit Filings, LLC which provided that eWrit was Westminster's "sole and exclusive Agent with regard to the preparation, filing, and prosecution" of summary ejectment actions in Maryland.

All of the appellants signed written lease agreements with Westminster. The leases were for one year and were renewed annually. Ms. Ryer's lease with Westminster dated December 16, 2016, is a typical lease. It states in relevant part (bold emphasis in original):

> THIS LEASE AGREEMENT, made on December 16, 2016, whereby [Westminster,] agent for Landlord, does hereby lease onto Tenant, the premises known as 36 Benoni Circle hereafter referred to as the Premises . . . . at a rental of **Twelve Thousand Eight Hundred Fifty Two Dollars and 00 Cents** ($12,852.00), payable in equal monthly installments of **One**

---

[6] According to appellants, Dutch Village, Carroll Park, Whispering Woods and Pleasantview were among the seventeen multi-family apartment and townhouse rental properties that Westminster managed in Maryland during the period relevant to the issues in this appeal. Appellants further assert that these properties contain approximately 9,000 dwelling units. Westminster does not challenge either of these contentions.

**Thousand Seventy One Dollars 00 Cents ($1071.00)**, in advance, without notice, deductions, set off, or demand, on the first day of each month.

In construing a residential lease agreement that contained very similar language, the Supreme Court of Maryland used the term "fixed monthly charge" to refer to the equal monthly installments of the annual rent. *Lockett*, 446 Md. at 420–21. We will do the same in this opinion.

In addition to setting out the lease term, the annual rent, and the fixed monthly charge, the lease agreement between Ms. Ryer and Westminster contained a number of standard provisions that appear in all of the lease agreements between Westminster and the appellants. The ones relevant to the issues raised in this appeal are (formatting altered, emphasis added):

> 8. Definition of Rent: *All payments* from Tenant to Landlord required under the terms of this Lease, *including, but not limited to, [c]ourt costs, shall be deemed rent*.
>
> *   *   *
>
> 17. Repairs. Landlord shall be responsible for repairs to the Premises . . . except that Tenant agrees to pay the costs of [all repairs caused by] Tenant, Tenant's family, employees, [and] invitees[.]
>
> *   *   *
>
> 30. Payment of Rent: Tenant shall pay the rent at the Landlord's office or at such other place as may be designated by the Landlord. Rent will be accepted by the Landlord Monday through Friday, 9:00 a.m. to 4:30 p.m. . . .
>
> Should Landlord employ an Agent to institute proceedings for rent and /or repossession of the Premises for non-payment of any installment of rent, and should such rent be due and owing as of the filing of said proceedings, *Tenant shall pay to Landlord the reasonable costs incurred by Landlord in utilizing the services of said Agent*.

\* \* \*

31. Late Charge: Tenant will pay, *as additional rent, a charge of five (5 %) percent of the monthly rental as a late charge* in the event that Tenant shall fail to pay, both while occupying the Premises and after vacating same, an installment of the rent after 4:30 p.m. on the fourth day beyond the date on which it became due and payable. This shall not constitute a waiver of the Landlord's right to institute proceedings for rent, damages and /or repossession of the Premises for non-payment of any installment of rent.

\* \* \*

32. Application of Payments: All payments from Tenant to Landlord may, at Landlord's option, be applied in the following order to debts owed by Tenant to Landlord: *late charges, agent's fees, attorney's fees, court costs, obligations other than rent (if any) due Landlord, other past due rent other than monthly rent, past due monthly rent, current monthly rent*.

\* \* \*

Appellants assert that these lease provisions are inconsistent with Maryland law, have been and continue to be interpreted and applied by Westminster in ways that violate Maryland law, or both. As a result, according to appellants, Westminster has charged "excessive and illegal fees for the late payment of rent . . . . throughout its multi-family rental properties in Maryland" in situations in which tenants fail to pay their rent in full on a timely basis. What follows is a summary of their contentions.[7]

Westminster's tenants are required to pay their fixed monthly rent in advance, in full, and on or before the first day of the month. If a tenant fails to pay their rent in full by the fifth day of the month, Westminster charges a late fee of 5% of the month's rent.

---

[7] The operative complaint in this case is appellants' third amended complaint. The complaint includes detailed allegations as to the dates that Westminster imposed these charges on each appellant as well as the amount of each charge.

Appellants concede that Westminster has the right to charge a late fee, but they assert the 5% penalty is the maximum permitted by Md. Code, Real Prop. § 8-208(d)(3)(i).[8] However, according to appellants, Westminster imposes additional fees at the sixth day of the month or shortly thereafter:

First, Westminster charges what it terms an "agent's fee"[9] of either $10 or $12 and a "court fee" or "summons fee" of either $20 or $30 whenever its agent, eWrit Filings, LLC, files a summary ejectment action in the District Court pursuant to Md. Code, Real Prop. § 8-401 for repossession of the premises for failure to pay rent. Appellants assert

_____

[8] Real Prop. § 8-208(d) states in pertinent part:

> (d) A landlord may not use a lease or form of lease containing any provision that:
>
>                 \*      \*      \*
>
> (3)(i) Provides for a penalty for the late payment of rent in excess of 5% of the amount of rent due for the rental period for which the payment was delinquent[.]

[9] In her deposition, Theresa Webb, who was one of Westminster's corporate designees, testified that the "agent's fee" reimbursed Westminster for the time spent by its own employees for "door knocking, letters sent out to the residents" who were behind on their rent. Ms. Webb testified that "we should have changed the code [in Westminster's accounting and property management software program] but we didn't."

According to appellants' operative complaint, Westminster charged Mr. Smith five times for a $10 agent fee and once for a $12 agent fee. Westminster charged Ms. Smith eight times for a $10 agent fee and twice for a $12 agent fee. Westminster charged Ms. Ryer five times for a $10 agent fee and once for a $12 agent fee, Westminster charged Ms. McBride ten times for a $10 agent fee, and Westminster charged Ms. Sneed a $10 agent fee thirty-one times and a $12 agent fee once.

that eWrit does not charge a fee to Westminster for filing such documents.[10] If a tenant fails to pay their rent on or before the 5th, then on the next day, Westminster typically charges the tenant the 5% late fee, a $10 agent fee, and summons fee of $20 to $30,[11] even though eWrit charges Westminster $10 for filing a summons. Appellants assert that by imposing these fees on tenants in addition to the 5% late fee, Westminster violated Real Prop. § 8-208(d)(3)(i).

---

[10] The contract between eWrit and Westminster is in the record extract. Relevant to the issues before us, Westminster employed eWrit as its agent with regard to "the preparation, filing, and prosecution of Summary Ejectment Complaints and Warrants of Restitution" for the apartment and townhouse projects administered by Westminster in Maryland.

The contract provided that eWrit would not charge Westminster any fee for filing "writs" (which context indicates includes summary ejectment complaints filed by landlords pursuant to Real Prop. § 8-401) but would charge a service fee of $10 for filing a summons.

[11] Appellants allege in their operative complaint that Westminster charged a summons fee to Mr. Smith four times, Ms. Smith eight times, Ms. Ryer five times, Ms. McBride ten times, and Ms. Snead thirty-one times.

Second, when Westminster seeks a warrant of restitution[12] from the District Court for Baltimore City, it charges the tenant a filing fee of $80[13], even though the filing fee for summary ejectment actions throughout the State, including the City of Baltimore, was $50. Appellants assert that $50 was the only cost that eWrit charged Westminster for each such filing.

Third, appellants contend that:

> RP § 8-208(d)(2) prohibits landlords from using any lease that "[h]as the tenant agree to waive or forego any right or remedy provided by applicable law." Yet Westminster's form lease purports to allow it to define all charges as "rent" (paragraph 8)[14] and to allocate tenants' rent payments to non-rent charges (paragraph 32)[15] in violation of Maryland law. Each Appellant's lease with Westminster had these provisions.

---

[12] A warrant of restitution is a court order typically directed to the local sheriff's department directing the official to assist the landlord in gaining possession of the leased premises and removing therefrom any personal property of the tenant and other occupants of the property. *See* Real Prop. § 8-401(f)(1)(i); *see also Thornton Mellon LLC v. Frederick County Sheriff*, 479 Md. 474, 485 n.6 (2022) ("[A] warrant of restitution is a method for possession of property to be restored to a landlord.")

[13] According to appellants' operative complaint, Westminster charged Mr. Smith a $40 writ fee once. Furthermore, Westminster charged an $80 Writ Fee to Ms. Smith three times and to Ms. Snead nine times.

[14] Paragraph 8 of the lease states "[a]ll payments from Tenant to Landlord required under the terms of this Lease, including, but not limited to, [c]ourt costs, shall be deemed rent."

[15] Paragraph 32 of the lease states:

All payments from Tenant to Landlord may, at Landlord's option, be applied in the following order to debts owed by Tenant to Landlord: late charges, agent's fees, attorney's fees, court costs, obligations other than

*   *   *

Westminster's lease provisions waive Appellants' rights to be summarily evicted only for failure to pay rent under RP § 8-401—not for failure to pay other non-rent charges.[16]

Fourth, appellants assert that Westminster assessed these charges against them on numerous occasions and routinely refused to dismiss pending eviction proceedings until they had paid the past due rent, the 5% late charge, and all of the agent's fees, summons fees, filing fees, and other improper or illegal charges. Moreover, appellants assert that Westminster did not reimburse tenants for the agent's and summons fees even if their case was dismissed or resulted in a judgment for the tenant.

Next, and pertinent to Westminster's contention that they have no meritorious claims for damages, appellants assert that, in a process beginning approximately one year after appellants filed their initial complaint, Westminster:

> credited the wrongfully charged $12 agent fees to current tenants, including Ms. Smith and Ms. Sneed, but it has not paid interest for the time in which it unlawfully retained those funds. In addition, Westminster has not refunded or credited these improper fees plus interest to former tenants, including Mr. Smith. Similarly, Westminster has admitted that it charged tenants at Dutch Village and Pleasantview (where Ms. Smith and Ms. Sneed lived) $80 for filing each warrant of restitution when the actual cost was $50, and it has credited Ms. Smith and Ms. Sneed $30 for each inflated

> rent (if any) due Landlord, other past due rent other than monthly rent, past due monthly rent, current monthly rent.

[16] For example, appellants assert that, "on May 8, 2017, Westminster sent Ms. Smith a 'Late Notice,' stating that she had 'not paid [her] monthly rental payment' and asking her to 'make [her] payment in full . . . to avoid further legal action that can result in possible eviction,' while listing as due a number of unpaid agent fees, a summons fee, and other non-rent charges."

charge, yet it has not paid interest for the time it unlawfully retained those funds, nor has it refunded or credited former tenants.

Based on these factual assertions, appellants contend that Westminster breached its contracts with appellants and violated the Maryland Consumer Protection Act (Md. Code, Com. Law §§ 13-101–501); the Maryland Consumer Debt Collection Act (Com. Law §§ 14-201–204); and various provisions of title 8 of the Real Property Article. In addition to damages, appellants assert that they are entitled to injunctive and declaratory relief. Finally, appellants contend that they have alleged an adequate factual basis to support their request for class action certification.

Westminster agrees with none of this. We will defer our discussion of its reasoning until later in this opinion.

## 2. THE RELEVANT PROCEDURAL HISTORY

Appellants filed their initial complaint on September 29, 2017. The complaint named two plaintiffs, Ms. Tenae Smith and Mr. Howard Smith, and, as defendants, Westminster, Dutch Village, LLC, and Carroll Park Holdings, LLC. In very brief summary, the complaint alleged that (1) Ms. Smith was a resident of the Dutch Village Apartments in Baltimore City; (2) Mr. Smith resided at the Carroll Park apartments in Baltimore County; (3) the Dutch Village Apartments were owned by Dutch Village, LLC; (4) the Carroll Park Apartments were owned by Carroll Park Holdings, LLC; and (5) Westminster was the manager of both properties.

We have summarized appellants' theory of their case against Westminster. The complaint set out claims based on Westminster's alleged violations of Real Prop. § 8-

208,[17] the Maryland Consumer Debt Collection Act, and the Maryland Consumer Protection Act, as well as claims for restitution, unjust enrichment, and breach of contract. In addition, plaintiffs sought declaratory and injunctive relief and class action certification. Westminster filed a notice of removal to the United States District Court for the District of Maryland, which remanded the case back to the circuit court a few months later. *See Smith v. Westminster Mgmt., LLC,* 292 F. Supp. 3d 645, 649–50 (D. Md. 2018).

Westminster then filed a motion to dismiss the complaint, which was denied as moot because appellants had filed an amended complaint. The amended complaint is not in the record extract but the docket entries indicate that the plaintiffs were Tenae Smith and Howard Smith. Westminster filed a motion to dismiss the amended complaint that is also not in the extract. Westminster's motion was granted in part and denied in part after a hearing by the circuit court on July 23, 2018. Neither the transcript of the hearing nor a copy of the court's order is in the extract.

On November 11, 2018, Mr. Smith and Ms. Smith filed a motion for class action certification and related relief. Before the court ruled on the motion, Mr. Smith and Ms. Smith, now joined by Ms. Ryer, Ms. McBride, and Ms. Sneed, filed a second amended complaint. The complaint alleged that Ms. Ryer and Ms. McBride were residents of the Whispering Woods Townhomes in Baltimore County, which was owned by Whispering Woods #299 Limited Partnership and Whispering Woods #250, LLC; and that Ms. Sneed

---

[17] Section 8-208(g)(1) states that "Any lease provision which is prohibited by terms of this section shall be unenforceable by the landlord."

was a resident at Pleasantview Townhomes in Baltimore City, which was owned by Pleasantview, LLC. The defendants named in the complaint were Westminster and the owners of the apartment and townhouse properties where the plaintiffs resided, i.e., Carroll Park Holdings, LLC, Dutch Village, LLC, Pleasantview, LLC, Whispering Woods #299 Limited Partnership, and Whispering Woods #250 Limited Partnership. Appellants alleged that Westminster was the property manager for each of these developments.

The causes of action pled in the second amended complaint were the same as those asserted in the original complaint. On January 19, 2019, appellants filed a revised motion for class certification. In the motion, they sought certification of "a class to include each Westminster tenant harmed by defendants' violations." On April 23, 2019, and after a hearing, the circuit court issued a detailed written memorandum opinion and order that denied the revised motion for class certification. We will discuss the motion and the court's ruling in part 10 of this opinion.

On May 15, 2019, appellants filed a third amended complaint and a second motion for class certification in order to "address[] the concerns expressed" by the court in its April 23, 2019 order.[18] Appellants also requested that the circuit court hold a *de novo* hearing on their second motion for class certification. In an order dated July 29, 2019,

---

[18] Although the earlier complaints filed by appellants named additional parties as defendants, Westminster Management and JK2 Westminster are the only defendants in the third amended class action complaint.

and without holding a hearing, the circuit court denied the motion. We will discuss this ruling in part 10 of this opinion.

After the circuit court denied their second motion for class certification, appellants filed a motion for summary judgment. Westminster responded with its own cross-motion for summary judgment. After a hearing, the circuit court denied appellants' motion and granted Westminster's. The court granted Westminster's motion "for reasons outlined in Defendants' Cross Motion for Summary Judgment . . . and those which it made during argument in open Court" without further explanation.

Appellants filed a timely notice of appeal. On September 7, 2021, and after briefing and oral argument, we issued an order inviting the parties to file supplemental briefs to address two decisions of the Supreme Court of Maryland that were filed after oral argument: *Chavis v. Blibaum & Associates, P. A.*, 476 Md. 534 (2021), and *Nationstar Mortgage LLC v. Donna Kemp*, 476 Md. 149 (2021). Both parties filed supplemental briefs and we will address them in our analysis of appellants' contention that Westminster violated the Maryland Consumer Debt Collection Act.

## 3. RECURRING ISSUES

Before we weigh into the details of Westminster's contentions, we will provide some additional context. Most (but not all) of the summary judgment arguments presented by Westminster both to the circuit court and this Court are based upon one or more of the following premises:

(1) Westminster, as a landlord: (i) has the right under Maryland law to define what constitutes "rent" and "costs" in its leases, and (ii) its definitions are binding on courts in summary ejectment actions;

(2) Maryland's statutory scheme for protecting residential tenants against overreaching by landlords prohibits only the inclusion of certain provisions in residential leases but does not extend to acts by landlords to enforce those provisions;

(3) the Maryland Consumer Debt Collection Act does not apply to Westminster's actions in this case; and

(4) the Maryland Consumer Protection Act does not apply to Westminster's actions in this case.

As we will explain, none of these premises are correct. [19]

### A. The proper meanings of "rent" and "costs" for the purposes of Real Prop. §§ 8-208 and 8-401

*Westminster's Threshold Contention*

We will first address a threshold argument made by Westminster. It contends that principles of "basic statutory construction establish[] that [Real Prop.] § 8-208(d)(3) only prohibits actual provisions in residential leases, not a property manager's conduct." Westminster asserts that it is being sued for its conduct in enforcing the provisions in its leases but not for the terms of the leases themselves. Therefore, Westminster reasons, § 8-208 does not provide a remedy to appellants.

Section 8-208 states in pertinent part (emphasis added):

(d) A landlord may not *use a lease or form of lease containing any provision* that:

---

[19] In its brief, Westminster raises a preservation argument:

In their opening Brief, Appellants elected to ignore the vast majority of Westminster's arguments and defenses upon which the Trial Court based its decision, leaving the majority of Westminster's arguments unchallenged. Having failed to address or contest the majority of the grounds upon which the Trial Court based its decision, Appellants waived their right to challenge those grounds.

We read appellants' brief differently. Although they framed their arguments in different terms, appellants' opening brief addressed the substance of all but one of the contentions presented by Westminster in the summary judgment proceeding. The exception is Westminster's contention that the statute of limitations argument had expired on appellants' Maryland Consumer Protection Act claim. But, as we will explain, Westminster's MCPA limitations argument is meritless.

(1) Has the tenant authorize any person to confess judgment on a claim arising out of the lease;

(2) *Has the tenant agree to waive or to forego any right or remedy provided by applicable law*;

(3)(i) Provides for a penalty for the late payment of rent in excess of 5% of the amount of rent due for the rental period for which the payment was delinquent[.]

We agree with Westminster that appellants' claims are based on Westminster's conduct, namely, its efforts to enforce the terms of its leases against them. And certainly, subsection (d) does not prohibit *conduct* by landlords. However, Real Prop. § 8-208(g) states (emphasis added):

(1) *Any lease provision which is prohibited by terms of this section shall be unenforceable by the landlord.*

(2) If the landlord includes in any lease a provision prohibited by this section or made unenforceable by § 8-105 of this title or § 8-203 of this subtitle, at any time subsequent to July 1, 1975, and tenders a lease containing such a provision *or attempts to enforce* or makes known to the tenant an intent to enforce any such provision, *the tenant may recover any actual damages incurred as a reason thereof, including reasonable attorney's fees*.

Courts interpret statutory language "in context [and] considered in light of the whole statute[.]" *Blue v. Prince George's County*, 434 Md. at 689. Westminster's efforts to balkanize Real Prop. § 8-208 notwithstanding, the statute means what it says: landlords may not include certain provisions in their leases (subsection (d)) and, if a landlord includes any of the proscribed terms in a lease and then attempts to enforce them, tenants can sue their landlords and recover damages (subsection (g)). In other words, Real Prop. § 8-208(g) establishes a private cause of action for tenants harmed by a landlord's

- 19 -

violation of the statute. *See Aleti v. Metro. Baltimore, LLC*, 251 Md. App. 482, 502 (2021), *aff'd*, 479 Md. 696 (2022) ("A private right of action allows an individual to bring an action in his or her personal capacity to enforce a legal claim.") (citing *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 517 (2014)).

We decline Westminster's invitation to pretend that Real Prop. § 8-208(g) does not exist.

*The proper meaning of "rent" for the purposes*
*of Real Prop. §§ 8-208 and 8-401*

One of the core disagreements between the parties is the meaning of the term "rent" as it is used in Real Prop. § 8-208 and Real Prop. § 8-401.

Appellants argue that the term "rent" in these statutes means one-twelfth of the annual rent specified in a tenant's lease for the use and enjoyment of the leased unit, that is, what our Supreme Court termed "the fixed monthly charge" in *Lockett*, 446 Md. at 420–21.

Westminster disagrees. According to it, "rent" means the fixed monthly charge together with whatever else the tenant might owe the landlord at any given time, including, but by no means limited to, the agent's fees, summons fees, and filing fees that, according to appellants, Westminster routinely charges tenants when they fail to pay their rent in full and on time. To support its position, Westminster relies on the definition of "rent" in its standard lease: "[a]ll payments from Tenant to Landlord required under the terms of this Lease, including, but not limited to, Court costs[.]" Westminster points to *Shum v. Gaudreau*, 317 Md. 49, 63–65 (1989) and *University Plaza Shopping Center,*

*Inc. v. Garcia*, 279 Md. 61 (1977), for the proposition that "payments for the tenant's use, possession, and enjoyment of the property may be treated as 'rent' under the lease so long as the parties so intend."

Westminster asserts that its definition is consistent with Maryland law and, as a result, Westminster properly added agent's fees and summons fees to the rent owed by tenants who were in default. Westminster also contends that it was within its rights to refuse to dismiss pending eviction proceedings until tenants pay the past due rent, the 5% late charge, and all of the agent's fees, summons fees, filing fees and court costs that it charged to the tenant's account. Finally, Westminster argues that the "application of payments"[20] provision in its standard lease justifies its practice of allocating tenants' payments of rent to non-rent items instead of rent.

We begin our analysis by pointing out that "[t]he term 'rent' "is not defined . . . in Title 8 of the Real Property Article." *Lockett*, 446 Md. at 418. In the absence of a statutory definition, Westminster posits that the concept of "rent" for the purposes of § 8-208 and § 8-401 "can include more than just the periodic monthly sum and can include payment(s) for the tenant's use, possession, and enjoyment of the land, if intended by the

---

[20] Westminster's standard lease states:

> Application of Payments: All payments from Tenant to Landlord may, at Landlord's option, be applied in the following order to debts owed by Tenant to Landlord: late charges, agent's fees, attorney's fees, court costs, obligations other than rent (if any) due Landlord, other past due rent other than monthly rent, past due monthly rent, current monthly rent.

parties." As authority, Westminster relies on the *Shum* and *Garcia* decisions.

Westminster reads these cases too broadly.

The lease at issue in *Garcia* was one for retail space in a shopping center. The lease

provided that, in addition to its regular monthly rent, the tenant was obligated to pay

"extra rent" to reimburse the landlord for costs incurred by the landlord in making

improvements to the leased premises for the tenant's use. *Id.* at 63–64. When the tenant

failed to pay the extra rent, the landlord filed a summary ejectment proceeding pursuant

to Real Prop. § 8-401.[21] The district court entered judgment in favor of the landlord, but

the judgment was reversed by the circuit court, which reasoned that the cost of the

---

[21] Real Prop. § 8-401 establishes a cause of action generally referred to as a "summary ejection proceeding" by which a court may "enter a money judgment for the amount of rent determined to be owing, and also to issue an order for the tenant to yield possession of the premises when the jurisdiction over the tenant has been obtained." *Pettiford v. Next Generation Tr. Serv.*, 467 Md. 624, 655 (2020) (quoting *Cane v. EZ Rentals*, 450 Md. 597, 602 (2016)).

As Judge Ellen Lipton Hollander noted in *Sager v. Housing Comm'n of Anne Arundel County*, 855 F. Supp. 2d 524 (D. Md. 2012) ("*Sager I*"):

> [A] proceeding under R.P. § 8–401 gives substantially greater leverage to the landlord and incentive for payment to the tenant, because of the speed at which the proceeding operates and the fact that the tenant will be swiftly evicted if she fails to pay the amounts found due and owing. Under the "truncated process" of R.P. § 8–401, "the landlord's entitlement to enforcement of his superior interest in the premises is a given, once the failure to pay rent is proven and appropriate notice is provided."

*Id.* at 556–57 (quoting *McDaniel v. Baranowski*, 419 Md. 560, 578 (2011)).

improvements was not "'rent' in the contemplation of [Real Prop. § 8-401]." 279 Md. at 65.

The Supreme Court of Maryland reversed the judgment of the circuit court. In pertinent part, the Court explained (emphasis added):

> [C]harges which may be definitely ascertained, paid by the tenant, and going to his use, possession and enjoyment of rental commercial premises, are rent if such was the intention of the parties. *We limit our holding at this time to premises leased for commercial purposes as distinguished from residential use. . . .* [I]n the negotiation of a lease of premises to be used for a commercial enterprise there is little likelihood of successful overreaching on the part of the landlord and of coerced adhesion on the part of the tenant, so that the final agreement would fairly represent the actual intention of the parties. *We expressly leave open the question whether similar charges under a lease of residential property would be rent*.

*Id.* at 67.

In *Shum*, our Supreme Court reiterated that its holding in *Garcia* was limited to commercial leases and that the definition of rent in residential leases was a matter "for determination on a case-by-case basis." 317 Md. at 63. Our Supreme Court again emphasized this distinction in *Lockett*, 446 Md. at 419 (explaining that in *Garcia* and *Shum*, "the Court signaled that it was less likely to defer to a lease's characterization of a particular charge as 'rent' in the context of a residential lease where there is unequal bargaining power and other policies would not allow free rein in the definition of rent[.]") (Cleaned up.)

Westminster asserts that:

> In the 43 years since *Garcia*, neither the [Supreme Court of Maryland] nor the General Assembly has expressed any different definition of "rent" under RP § 8-401 in the residential context. To do so would give the term

"rent" as used in RP § 8-401 two different meanings under the same statutory provision depending on the class of tenant to which it is applied (i.e. residential or commercial)—the illogical conclusion that Appellants urge this Court to adopt.

Westminster's contentions are unpersuasive.

The Supreme Court of Maryland provided the appropriate analytical template in *Lockett,* which addressed the meaning of the term "rent" in the context of Real Prop. § 8-208.1. That statute prohibits landlords from retaliating against tenants for, among other things, "participating in any tenants' organization." Real Prop. § 8-208.1(a)(2)(iii). The statute further provides that, if a court finds that a landlord has retaliated unlawfully against a tenant, the tenant is entitled to an award of damages of up to three months' rent but only if the tenant is "current on the rent due and owing to the landlord at the time of the alleged retaliatory action[.]" Real Prop. § 8-208.1(c) and (d). The issue in *Lockett* was whether the phrase "current on the rent due and owing" referred to the fixed monthly charge or to "all payments" that the tenant might owe the landlord when the retaliatory action took place.[22] 446 Md. at 415.

In *Lockett,* just as in the present case, the lease provided that (1) the tenant was obligated to pay an annual rent in twelve equal monthly installments (the "fixed monthly charge") and (2) that "'all payments' that the tenant owes to the landlord are 'deemed rent.'" *Id.* at 420. And the landlord in *Lockett*, just like Westminster in the present case,

_____

[22] In a similar fashion, Westminster's lease defines "rent" as "late charges, agent's fees, attorney's fees, court costs, obligations other than rent (if any) due Landlord."

- 24 -

argued that "rent" meant all payments from a tenant to a landlord required by the terms of the lease agreement.

The *Lockett* Court concluded that, for the purposes of Real Prop. § 8-208.1, the term "rent" "ordinarily means the periodic amount paid by a tenant for use or occupancy." 446 Md. at 422.

First, the Court observed that (emphasis in original):

> Blue Ocean argued to the Circuit Court—and to us—that it is simply a matter of applying the provisions of Ms. Lockett's lease that characterize various types of tenant obligations as "rent." But while the Legislature undoubtedly contemplated that a court would *refer* to the lease to identify "rent" for purposes of determining whether a tenant is "current on the rent" for purposes of RP § 8–208.1(d), it is not at all clear that the courts are required to *defer* to the lease and to regard as "rent" anything that is labeled so by the lease.

446 Md. at 418–19.

Second, the Court distinguished *Garcia* and *Shum* on the basis that those cases involved commercial, and not residential, leases. It explained (emphasis in original):

> In this case we are not only dealing with a residential lease, but are construing a statute—RP § 8–208.1—that applies *only* to residential leases.[23] It is unlikely that parties to a residential lease actually negotiate the definition of "rent." Residential leases are more likely to be provided on a take-it-or-leave-it basis[.] Given that residential leases are normally drafted by the landlord and not the subject of extensive negotiation, deferring to the lease's definition of "rent" would incentivize landlords to characterize all possible debts from the tenant to the landlord as "rent[.]"

---

[23] In the present case, we are dealing with two statutes, Real Prop. § 8-208 (which applies only to residential leases) and § 8-401 (which applies to residential and commercial leases). However, as we will explain, certain provisions of § 8-401 distinguish between residential and commercial leases.

*Id.* at 419–20.

Third, the Court observed that Ms. Lockett's lease agreement was internally inconsistent because:

> The second paragraph of the lease recites that the landlord is leasing the premises to Ms. Lockett for an annual 'rent' payable in equal monthly amounts. . . . On the other hand, paragraph 34 of the lease, entitled "Definition of Rent," states that "all payments" that the tenant owes to the landlord are "deemed rent.". . . . It thus appears a more accurate characterization of the lease to say that it provides for "rent" in a fixed monthly amount and for "deemed rent" and "additional rent" that may or may not exist in any particular month and that can vary wildly in amount, depending on what other payments the tenant may owe the landlord.

*Id.* at 420.

Fourth, the Court looked to the "ordinary meaning" of "rent" and concluded that "'rent' ordinarily means the periodic sum paid for the use or occupancy of property." *Id.* at 421 (citing MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 1054 (defining "rent" as "a usually fixed periodical return made by a tenant or occupant of property to the owner for the possession and use thereof")) and BLACK'S LAW DICTIONARY (10th ed. 2004) (defining "rent" as "consideration paid, usually periodically, for the use or occupancy of property (especially real property)."

Fifth, the Court observed that § 8–208.1 "is designed to protect tenants in residential properties against retaliation by landlords. It provides remedies for a tenant when a landlord retaliates in certain ways against the tenant for a variety of reasons. These remedies were not available at common law[.]" 446 Md. at 424. Because § 8-208.1 is

remedial, the Court stated that "it must be liberally construed in order to effectuate its broad remedial purpose." *Id.* (cleaned up).

Finally, the Court looked to the ways that "rent" is used elsewhere in the Real Property Article. *Id.* at 422–25. The Court concluded that:

> The ordinary meaning of "rent," the statutory context, and the remedial purpose of the statute all lead to the conclusion that the term "rent" in RP § 8–208.1 denotes the periodic charge for use or occupancy of the premises, but not the various other payments that the tenant may owe to the landlord from time to time, even if the lease characterizes them as "deemed rent" or "additional rent."

446 Md. at 425.

Returning to the case before us, we conclude that the lease agreements between Westminster and appellants and the lease at issue in *Lockett* are substantively indistinguishable as to the definition of rent. Both characterize "rent" as a sum charged to the tenant to reside in a unit for a year that is to be paid in twelve equal monthly installments. But the lease in *Lockett* and the leases at issue in the present case also provide that "rent" includes all payments from a tenant to landlord required under the terms of the lease. There is no suggestion that Westminster was willing to negotiate with prospective tenants regarding the terms of its standard lease conditions.[24]

Moreover, it is clear that Real Prop. §§ 8-208 and 8-401 are remedial statutes. Therefore, they "must be liberally construed in order to effectuate [their] broad remedial

---

[24] Westminster points out that prospective tenants could decline to sign a lease, but "take-it-or-leave-it" is not the equivalent of negotiation.

purpose[s]." *See Lockett*, 446 Md. at 424. Just as Real Prop. § 8-208.1 "is designed to protect tenants in residential properties against retaliation by landlords," *Lockett*, 446 Md. at 424, so too Real Prop. § 8-208 is designed to protect tenants of residential properties from certain types of overreaching by landlords such as charging a late fee in excess of 5% of the monthly rent due. The statute: (1) prohibits landlords from using leases that contain certain provisions that the General Assembly has determined are unfair or against public policy,[25] (2) declares that terms prohibited by the statute are unenforceable, and (3) establishes a cause of action for damages when landlords violate the statute.[26]

---

[25] Section 8-208(d) states in relevant part:

> (d) A landlord may not use a lease or form of lease containing any provision that:
>
> *　　*　　*
>
> (2) Has the tenant agree to waive or to forego any right or remedy provided by applicable law; [or]
>
> (3)(i) Provides for a penalty for the late payment of rent in excess of 5% of the amount of rent due for the rental period for which the payment was delinquent[.]
>
> *　　*

[26] Real Prop. § 2-208(g) states:

> (1) Any lease provision which is prohibited by terms of this section shall be unenforceable by the landlord.
>
> (2) If the landlord includes in any lease a provision prohibited by this section or made unenforceable by § 8-105 of this title or § 8-203 of this subtitle . . . and tenders a lease containing such a provision or attempts to enforce or makes known to the tenant an intent to enforce any such provision, the tenant may recover any actual damages incurred as a reason thereof, including reasonable attorney's fees.

Similarly, Real Prop. § 8-401 is also a remedial statute. It establishes an expedited process by which landlords can acquire possession of leased premises when the tenant fails to pay rent when due. *See Pettiford v. Next Generation Tr. Serv*., 467 Md. 624, 655–56 (2020) (summarizing the purposes of § 8-401).

As we have related, Westminster relies on the fact that after *Garcia* was filed, neither the Supreme Court of Maryland nor the General Assembly adopted a different definition of "rent" for RP § 8-401 in the residential context. Westminster asserts that reading *Lockett's* definition of rent for residential leases into § 8-401 would result in "two different meanings [of "rent"] under the same statutory provision depending on the class of tenant to which it is applied." According to Westminster, such a result would be "illogical."

We do not agree. In *Garcia, Shum*, and *Lockett*, the Supreme Court of Maryland made it clear that *Garcia's* holding did not extend to summary ejectment actions involving residential leases. Guided by the Court's reasoning in *Lockett,* we hold that "rent" for the purposes of Real Prop. § 8-208 means the fixed monthly charge that a tenant pays the landlord to reside in the rental unit.

Westminster is correct that our holding suggests that the term "rent" would have one meaning for residential leases and another for non-residential leases in Real Prop. § 8-401. But it is difficult to conceive how such a distinction would be the source of confusion because Real Prop. § 8-401 already distinguishes between ejectment proceedings involving commercial and residential leases. For example, § 8-401 currently

differentiates between residential and non-residential leases in terms of relief available to landlords in summary ejectment actions,[27] as well in other contexts.[28]

The final arrow in Westminster's quiver on this issue is a statutory interpretation argument based on our Supreme Court's decision in *Ben-Davies v. Blibaum & Assocs.*, 457 Md. 228, 270–71 (2018). Westminster asserts that, in *Lockett*, the Court "specifically limited its holding to define 'rent' only as that term is used in [Real Prop.] § 8-208.1 [and the Supreme Court] re-affirmed this limited holding in *Ben-Davies*." This is unpersuasive.

The Court's opinion in *Ben-Davies* addressed a certified question from the United States District Court for the District of Maryland regarding the appropriate interest rate that a judgment entered after "a landlord sues a tenant for breach of contract based on a

---

[27] *Compare* Real Prop. § 8-401(e)(2)(iv) (In a summary ejectment action involving "*a residential tenancy*," the court may enter judgment "in favor of the landlord for the amount of rent and late fees determined to be due together with costs of the suit if the court finds that the *residential tenant was personally served with a summons*.") *with* Real Prop. § 8-401(e)(2)(v) ("In the case of *a nonresidential tenancy*, if the court finds that there was such service of process or submission to the jurisdiction of the court as would support a judgment in contract or tort, the court may also give judgment in favor of the landlord for: 1. The amount of rent and late fees determined to be due; 2. Costs of the suit; and 3. Reasonable attorney's fees, if the lease agreement authorizes the landlord to recover attorney's fees.") (Emphasis added.)

[28] *See* Real Prop. § 8-401(c)(1) (providing that, before an ejectment action can be filed for residential premises, the landlord must provide written notice to the tenant); Real Prop. § 8-401(d) (staying ejectment proceedings against properties that are the primary residences of certain individuals furloughed without pay during government shutdowns); and Real Prop. § 8-401(f)(2)(1) (authorizing a court to stay execution of a warrant of restitution of residential properties because of extreme weather conditions).

residential lease; the trial court enters judgment in the landlord's favor against the tenant;

the judgment includes unpaid rent and other expenses; and the judgment does not

delineate what portion thereof was comprised of unpaid rent, as opposed to the other

expenses—such as late fees or the cost of repairs to the premises." 457 Md. at 231. The

Court held that the applicable post-judgment interest rate was the 6% post-judgment

interest rate specified in Courts & Jud. Proc. § 11-107(b) for "money judgments for rent

of residential premises." *Id.* at 233.

The Court concluded that this result was consistent with its prior analysis in *Lockett*

and, in doing so, explained (emphasis added):

> Significantly, however, this Court [in *Lockett*] did not purport to define the
> word "rent" as it is used in the phrase "money judgment for rent of
> residential premises" in CJ § 11–107(b), or in any way indicate that the
> term "rent" applies solely to money judgments entered pursuant to RP § 8–
> 401. Put simply, *although Lockett may be relevant to the interpretation of
> the word "rent" as used in a statute within Title 8 of the Real Property
> Article*, *Lockett* does not address the issue of whether judgments like those
> in the instant cases constitute "money judgment[s] for rent of residential
> premises" under CJ § 11–107(b).

457 Md. at 271.

From this premise, Westminster states:

> After the Court of Appeals issued its opinion in *Ben-Davies* on January 19,
> 2018, the General Assembly had the remainder of the 2018 legislative
> session and the entire 2019 legislative session to expand the narrow holding
> in *Lockett* if it so desired, and if it considered it to be incorrect. . . .
> Additionally, the General Assembly considered several post-*Lockett* bills
> proposed and/or supported by tenant advocacy groups. . . to apply *Lockett's*
> definition of "rent" to RP § 8-401. These attempts to extend *Lockett* beyond
> the retaliatory eviction context failed.

The General Assembly, therefore, has had multiple opportunities to extend the *Lockett* definition of "rent" to RP § 8-401 and has chosen not to do so. By declining to address this issue (while at the same time amending other provisions within the statute), the General Assembly confirmed its rejection of Appellants' attempt to expand the *Lockett* definition of "rent" to RP § 8-401.

We do not agree. When engaging in statutory interpretation, legislative inaction is seldom a reliable guide in discerning legislative intent. As our Supreme Court has explained:

Legislative rejection is not an infallible indicator of legislative intent. We have pointed out that this is because the General Assembly may well have concluded that the rejected amendment warranted further investigation before acting on it, or decided not to enact the amendment for a myriad of other reasons. The fact that a bill on a specific subject fails of passage in the General Assembly is a rather weak reed upon which to lean in ascertaining legislative intent.

*City of Baltimore Dev. Corp. v. Carmel Realty Assocs.*, 395 Md. 299, 329 (2006) (cleaned up) (citing *State v. Bell*, 351 Md. 709, 721 (1998); *Automobile Trade Ass'n v. Ins. Comm'nr*, 292 Md. 15, 24 (1981); *Andy's Ice Cream, Inc. v. City of Salisbury*, 125 Md. App. 125, 154 (1999)).

In conclusion, the Court's analysis in *Lockett* suggests that, absent action by the General Assembly, it is courts, and not landlords, who decide what is "rent" in residential leases for the purposes of Real Prop. §§ 8-208 and 8-401. Consistent with the Supreme Court's reasoning in *Lockett,* we hold that:

(1) The term "rent" in Real Prop. § 8-208 means "the periodic charge for use or occupancy of the premises, but not the various other payments that the tenant may owe to

the landlord from time to time, even if the lease characterizes them as 'deemed rent' or 'additional rent.'" *Lockett,* 446 Md. at 425;

(2) The term "rent" has the same meaning in the context of summary ejectment actions brought under Real Prop. § 8-401 for residential leases; and

(3) The term "rent" in the context of summary ejectment actions brought under Real Prop. § 8-401 for residential leases does not include charges that landlords are prohibited from treating as "rent" under Real Prop. § 8-208.

*The proper meaning of "costs" for the purposes*
*of Real Prop. §§ 8-208 and 8-401*

It is appellants' position that Westminster was without legal authority to charge tenants with agent's fees and summons fees in addition to the 5% penalty for late payment of rent permitted by Real Prop. § 8-208(d)(3). Westminster asserts that "these fees are not a 'penalty'—they are reimbursements for actual expenditures that Westminster incurred due to [appellants'] failure to pay rent and to which [they] agreed when entering into their leases." For support, Westminster relies on Real Prop. § 8-401(e)(2)(iv),[29] which states (emphasis added):

> In the case of a residential tenancy, the court may also give judgment in favor of the landlord for the amount of rent and *late fees* determined to be due together *with costs of the suit* if the court finds that the residential tenant was personally served with a summons.

---

[29] In its appellate brief, Westminster actually cites to Real Prop. § 4-801(e)(1), which authorizes the court to grant postponements in summary ejectment proceedings under certain circumstances. Real Prop. § 8-401(e)(2)(iv) is the relevant statutory provision.

Westminster states:

> In crafting this provision, the General Assembly plainly distinguished between "costs" and "fees," indicating that costs incurred [by a landlord] in pursuing RP § 8-401 actions are not included within the definition of "late fees."

Westminster is incorrect when it equates the concept of "costs" in § 8-401(e)(2)(iv) with the expenses that it incurs as a result of a tenant's failure to pay rent in full and on time.

In *Madison v. Gelber,* 202 Md. App. 44, 52 (2011), this Court explained that, in the context of Md. Rule 2-603, the term "cost" refers to "services performed by clerks for which costs are assessed and the amount to be collected by the clerk for those services" and to fees paid to sheriffs "for the service of various papers and for conducting execution and attachment sales." The Court also explained that the clerical services for which fees can be charged and the amount of those fees "are set forth in a Schedule adopted by the State Court Administrator, with the approval of the Board of Public Works, all as authorized by [Md. Code, Courts & Jud. Proc. § 7-202]. The Schedule is printed in the Code immediately following that section." 202 Md. App. at 50–51.

Md. Rule 2-603 applies to civil cases filed in the circuit court. The equivalent rule for

the District Court is Rule 3-603.[30] What constitutes a "cost" for the purposes of Rule 3-603 is defined by Md. Code, Courts & Jud. Proc. § 7-301(c)(1), which states that "costs" in civil actions filed in the District Court of Maryland "are those prescribed by law subject to modification by law, rule, or administrative regulation." *Chavis v. Blibaum & Associates*, 476 Md. 534, 575 (2021). The laws, rules, and administrative regulations that define court costs for the District Court are found in the District Court of Maryland Cost Schedule.[31] The Cost Schedule sets fees to be charged and collected by the District Court clerk's office and fees to be charged and collected by the sheriffs' departments (when process is served by deputy sheriffs) or by the District Court (when process is served by District Court constables.)[32] There is nothing in Courts & Jud. Proc. § 7-301, Rule 3-603,

---

[30] Md. Rule 3-603 states in pertinent part:

> (a) Allowance and Allocation. Unless otherwise provided by rule, law, or order of court, the prevailing party is entitled to the allowance of costs. The court, by order, may allocate costs among the parties.

> (b) Assessment by the Court. When the court orders or requests a transcript or, on its own initiative, appoints an expert or interpreter, the court may assess as costs some or all of the expenses or may order payment of some or all of the expenses from public funds. On motion of a party and after hearing, if requested, the court may assess as costs any reasonable and necessary expenses, to the extent permitted by rule or law.

*    *    *

[31] The District Court Cost Schedule is not included in the Maryland Code. However, it is available at www.courts.state.md.us/sites/default/files/court-forms/dca109.pdf.

[32] *See* Courts & Jud. Proc. § 2-604(a) ("The Chief Judge of the District Court, upon the recommendation of the administrative judge of each district, shall appoint the number of constables required to serve process of the District Court within that district.") The Cost Schedule indicates that District Court constables serve process in Baltimore County.

or the Cost Schedule that suggests that the concept of "costs" for the purposes of the rule includes any expenses by a party that are not reflected on the Cost Schedule itself. *See Velicky v. Copycat Bldg. LLC*, 476 Md. 435, 453–54, (2021) (explaining that in a summary ejectment action, "[i]f the court enters judgment in favor of the landlord, including possession of the premises, the tenant may redeem the leased premises if the tenant tenders to the landlord the amount of the judgment, as well *as any court awarded costs and fees*, at any time prior to the execution of the eviction order. RP § 8-401(g)(1))." (Emphasis added.)

### B. How the Maryland Consumer Debt Collection Act Applies to this Case

*Chavis v. Blibaum & Associates, P.A.,* 476 Md. 534 (2021) and
*Nationstar Mortgage v. Kemp,* 476 Md. 149 (2021)

Appellants assert that Westminster's debt collection activities violated the Maryland Consumer Debt Collection Act, (the "MCDCA"), Md. Code, Com. Law §§ 14-201–04. The Maryland Consumer Debt Collection Act is a "remedial consumer protection statute[] aimed at 'protect[ing] the public from unfair or deceptive trade practices by creditors engaged in debt collection activities.'" *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 372 (4th Cir. 2022) (quoting *Andrews & Lawrence Pro. Servs. v. Mills*, 467 Md. 126, 132 (2020)).

Pertinent to the issues raised in this appeal, the Maryland Consumer Debt Collection Act defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Com. Law § 14-201(a). Com. Law § 14-202 states:

In collecting or attempting to collect an alleged debt a collector may not:

*   *   *

(8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.][33]

Westminster asserts that the statute does not apply to it for two reasons.

The first is that, according to Westminster, this Court "has held that entities, like Westminster, that are merely collecting their own debts are not 'collectors' within the meaning and purpose of the MCDCA." In support of this assertion, Westminster relies on two cases: *Old Republic Ins. Co. v. Gordon*, 228 Md. App. 1 (2016), and *Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 948 F. Supp.2d 525, 532 (D. Md. 2013). Neither case supports Westminster's position. *Old Republic* has nothing to do with the Maryland Consumer Debt Collection Act.[34] In *Ramsay*, the court expressly declined to address the plaintiff's Maryland Consumer Debt Collection Act claim. *Id.* at 537.[35]

---

[33] As the Supreme Court of Maryland noted in *Chavis v. Blibaum & Associates*, 476 Md. 534, 552 n.9 (2021), the General Assembly amended § 14-202 in 2018. *See* 2018 Md. Laws, Ch. 731, § 1; Ch. 732, § 3. The amendment became effective on October 1, 2018, which was after appellants filed their original complaint. Neither party asserts that the 2018 amendments apply to this case.

[34] The issue in *Old Republic* was whether an insurance company that paid a claim on a credit insurance policy and then attempted to recover the amount of the claim from the borrower was required to be licensed under the Maryland Collection Agency Licensing Act, Md. Code, Bus. Reg § 7-101–04. 228 Md. App. at 2. The majority opinion did not discuss the Maryland Consumer Debt Collection Act in any fashion and the dissenting opinion mentioned it only in passing. 228 Md. App. at 26.

[35] That Westminster may not have qualified as a "debt collector" under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, which is the federal equivalent of the Maryland Consumer Debt Collection, is immaterial because "[t]he MCDCA contains a

Moreover, Westminster's interpretation of § 14-201(b) is incorrect. The United States Court of Appeals for the Fourth Circuit addressed this issue in *Alexander v. Carrington Mortg. Servs.*, LLC, 23 F.4th 370, 375–76 (4th Cir. 2022):

> The MCDCA broadly defines a "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code Ann., Com. Law § 14-201(b). Here there is no dispute that Carrington is a person, as the MCDCA defines "person" to include "an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity." *Id*. § 14-201(d). Nor is there any dispute that plaintiffs' debt arose out of a consumer transaction, which the statute defines as "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." *Id*. § 14-201(c). And it is plain that, by collecting borrowers' monthly mortgage payments, Carrington is collecting a debt. Each piece of the statutory puzzle thus fits together: Carrington counts as a "collector" under the MCDCA.

Westminster is indisputably a "person" for the purposes of § 14-201(b). The debts it collected arose out of archetypical consumer transactions, namely, paying rent for a residential apartments. Westminster does not dispute that it both collected and attempted to collect the agents' fees, summons fees, and filing fees at issue in this case. Just as in *Carrington,* "[e]ach piece of the statutory puzzle thus fits together."

Westminster's second argument is that appellants' "MCDCA claim fails because it constitutes an improper attack on the *validity* of the underlying debt, not Westminster's alleged method of collection." (Emphasis in original.) Although this contention may have

---

broader definition of 'collector' than the definition of 'debt collector' under the FDCPA." *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 376 (4th Cir. 2022).

had merit when Westminster filed its brief,[36] the law of Maryland has been clarified. In

*Chavis v. Blibaum & Associates,* our Supreme Court held that the Maryland Consumer

Debt Collection Act prohibits

> a debt collector from engaging in certain conduct when "collecting or attempting to collect an alleged debt." The broad reach of the statute is indicated by the use of the phrase "alleged debt"—the conduct proscribed by the statute could concern both valid debts and invalid ones. . . .
>
> In short, nothing in the MCDCA generally, or in § 14-202 specifically, warrants an interpretation of § 14-202(8) that limits its applicability to "methods" of debt collection. To the contrary, the remedial nature of the MCDCA requires that we interpret § 14-202(8) broadly to reach any claim, attempt, or threat to enforce a right that a debt collector knows does not exist. *Thus, we hold that a plaintiff may invoke § 14-202(8) when the amount claimed by the debt collector includes sums that the debt collector, to its knowledge, does not have the right to collect.*

476 Md. 534, 559–60 (2021) (footnotes omitted and emphasis added).

Additionally, the Court "agreed" with decisions that:

> have interpreted the "knowledge" element of a claim under § 14-202(8) to require proof that a debt collector claimed, attempted, or threatened to enforce the non-existent right "with actual knowledge or with reckless disregard as to the falsity of the existence of the right."

476 Md. at 563 (citing, *inter alia*, *Fontell v. Hassett*, 870 F. Supp. 2d 395, 407 (D. Md.

2012), and *Kouabo v. Chevy Chase Bank*, 336 F. Supp. 2d 471, 475 (D. Md. 2004)).

---

[36] *See, e.g., Chavis v. Blibaum Assocs., P.A.*, 246 Md. App. 517, 528 (2020), *rev'd* 476 Md. 534 (2021) ("*Chavis I*"); and *Fontell v. Hassett*, 870 F. Supp. 2d 395, 405 (D. Md. 2012).

Finally, the Court held that "the distinction between non-reckless and reckless mistakes of law that the General Assembly has incorporated in § 14-202(8), and . . . whether a debt collector acted recklessly presents a question of fact[.]" 476 Md. at 571.

On the same day that the Court's opinion in *Chavis* was filed, the Supreme Court of Maryland filed its opinion in *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 191 (2021), in which the Court held that "to adequately allege the requisite knowledge for purposes of [Com. Law § 14-202(8)], a plaintiff must allege that the defendant either actually knew that it did not possess a right it claimed as part of its debt collection efforts, or recklessly disregarded the falsity of that claim."

*The Parties' Supplemental Briefs*

As we previously noted, *Chavis* and *Kemp* were filed after the case before us was briefed and argued. We permitted the parties to file supplemental briefs to address the possible effect of these decisions on the issues raised in the present case.

According to appellants, *Chavis* and *Kemp* make it clear that:

(1) Com. Law § 14-202(8) prohibits a debt collector from collecting or attempting to collect amounts that it does not have the right to collect;

(2) a debt collector can have the requisite knowledge to violate the MCDCA when it attempts to assert a right with actual knowledge that the right does not exist or with a reckless disregard of whether the right exists; and

(3) the record before the circuit court established that Westminster "knowingly attempt[ed] to collect and collect[ed] fees to which it had no right" or acted with a

reckless disregard as to the legal validity of the various fees it charged appellants when they fell behind on their rent.

Westminster disagrees. It asserts that:

(1) The holdings of *Chavis* and *Kemp* notwithstanding, appellants' Maryland Consumer Debt Collection Act claims fail because Westminster was "not a 'collector' within the meaning and purpose of the MCDCA because it merely collects its own debts." As we have previously explained, this contention is wrong. *See Carrington*, 23 F.4th at 375–76.

(2) The holdings of *Chavis* and *Kemp* require appellants "to produce evidence that Westminster knew that its practice of charging separate, distinct, and privately contracted-for agent and summons fees at the same time a late fee is assessed violated [Real Prop.] § 8-208(d)(3), or that Westminster acted with reckless disregard of that fact." Westminster contends that appellants failed to do so. We do not agree.

Appellants presented evidence from which a fact-finder could conclude that Westminster either knew or acted with reckless disregard of the fact that the filing fee for summary ejectment actions in the City of Baltimore was $50 when Westminster claimed, and collected, $80 from Baltimore residents. Additionally, appellants presented evidence, in the form of the deposition testimony of one of Westminster's designated corporate representatives, from which a fact-finder could infer that Westminster knew or acted with reckless disregard for the truth when it claimed that it had a right to be reimbursed for a

- 41 -

$15 "agents fee" when in fact, no such fee was charged.[37] This is more than sufficient to demonstrate that there are "genuine dispute[s] as to . . . material facts" to preclude entry of summary judgment. Md. Rule 2-501(f).

Consistent with the holdings of the Supreme Court of Maryland in *Chavis* and *Kemp*, we hold that the Maryland Consumer Debt Collection Act applies to Westminster's efforts to require appellants to pay agents' fees, summons fees, and filing fees in the time-frame set out in the third amended complaint. Whether Westminster violated the Act is a factual matter that must be resolved on remand.[38]

C. How the Maryland Consumer Protection Act Applies to this Case

Westminster asserts that appellants' claim that its conduct violated the Maryland Consumer Protection Act fails as a matter of law because "the conduct that [appellants] challenge did not occur at the outset of Appellants' leases." Westminster continues:

> Maryland courts have consistently held that in landlord/tenant cases, the MCPA only applies where the unfair or deceptive practice occurred during the establishment of the landlord/tenant relationship. *See Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 683 (1994), *overruled on other grounds by Brooks v. Lewin Realty III, Inc.*, 378 Md. 70 (2003)); *see also Scroggins v. Dahne*, 335 Md. 688, 696 (1994); *Allen v. Dackman*, 184 Md. App. 1, 9 (2009), *reversed on other grounds by Allen v. Dackman*, 413 Md. 132 (2010); *Berg v. Byrd*, 124 Md. App. 208, 214 (1998); *Hartford Acc.*

---

[37] See footnotes 9 and 10, *supra*.

[38] Westminster also asserts that the Court's analyses in *Chavis* and *Kemp* are not a basis to grant any part of appellants' motion for summary judgment. Because appellants did not assert in their opening brief that the circuit court erred in denying their motion, we need not address this issue. *See, e.g. O'Sullivan v. Kimmett*, 252 Md. App. 653, 678 n.6 (2021).

*and Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'Ship*, 109 Md. App. 217, 279 n. 16 (1996).

With the exception of *Scarlett Harbor* (which doesn't deal with misrepresentations made by a lessor), all of the cases cited by Westminster involve claims for lead-based paint poisoning. They stand for the proposition that, when a tenant alleges that the landlord has violated the Maryland Consumer Protection Act, specifically, Com. Law § 13-303,[39] by misrepresenting the condition of the leased premises, the violation occurs when the consumer initially entered into the lease. *See, e.g., Richwind*, 335 Md. at 683–84. But appellants are not alleging that Westminster misrepresented the condition of their rental units when they initially rented them. Their claim is that Westminster violated the Maryland Consumer Debt Collection Act by collecting money from them that it had no legal right to collect.

A statute of limitations begins to run on "the date that a claim accrues. Generally, a claim accrues when the plaintiff suffers the actionable harm." *Rounds v. Maryland-Nat. Cap. Park & Plan. Comm'n*, 441 Md. 621, 654 (2015). Claims pursuant to the Maryland Consumer Debt Collection Act are no exception. *See Peete-Bey v. Educ. Credit Mgmt. Corp.*, 131 F. Supp. 3d 422, 434 (D. Md. 2015). Westminster points to no authority for

---

[39] Com. Law § 13-303 states in pertinent part:

A person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in:
(1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services[.]

* * *

the proposition that the statute of limitations under the MCDCA begins to run when the debtor enters into a contract or incurs the debt that the collector later attempts to collect.

A violation of the Maryland Consumer Debt Collection Act is a *per se* violation of the Maryland Consumer Protection Act. *See* Com. Law 13-301.[40] Additionally, appellants alleged an alternative theory of liability under the Maryland Consumer Protection Act, namely, that Westminster violated Com. Law § 13-301(9)(iii) by engaging in

> [d]eception, fraud, false pretense, false premise, misrepresentation, or knowing . . . omission of any material fact with the intent that a consumer rely on the same in connection with:
>
> *     *     *
>
> The subsequent performance of a merchant with respect to an agreement of sale, lease, or rental[.]

We hold that appellants have alleged legally sufficient claims that Westminster violated the Maryland Consumer Protection Act.

### 4. WESTMINSTER'S MOTION FOR SUMMARY JUDGMENT

By our count, Westminster presented twenty-seven contentions, sub-contentions, and variations on the same themes to the circuit court in support of its summary judgment

---

[40] Com. Law § 13-301(14)(iii) states in pertinent part:

> Unfair, abusive, or deceptive trade practices include any:
>
> *     *     *
>
> (14) Violation of a provision of:
>
> *     *     *
>
> (iii) Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act[.]

motion. In granting Westminster's motion, the circuit court stated that its decision was based on the "reasons outlined in Defendants' Cross Motion for Summary Judgment . . . . and those which [Westminster] made during argument in open Court[.]"[41] We read the court's order to mean that the court agreed with each and every contention raised by Westminster.

Westminster's contentions are:[42]

*Appellants' claims for violations of Real Prop. § 8-208 fail as a matter of law because:*

> 1. Real Prop. § 8-208 prohibits the inclusion of certain provisions in residential leases, not the conduct of a property manager, therefore Westminster's alleged "charging" and "collecting" of agent fees and summons fees cannot violate Real Prop. § 8-208(d)(3).

> 2. The "Late Charge" penalty provision in appellants' leases is consistent with— not in violation of—Real Prop. § 8-208(d)(3), and does not include "agent fees" and "summons fees," which are distinct privately contracted-for reimbursable expenses.

*Appellants cannot establish their claims for violation of Real Prop. § 8-208(d)(2) because:*

> 3. The General Assembly has repeatedly refused to extend *Lockett v. Blue Ocean Bristol, LLC's* definition of "rent" under Real Prop. § 8-208.1 to RP§ 8-401. Therefore, the Court of Appeals' holding in *University Plaza Shopping Center, Inc. v. Garcia* that "rent" means all "payments for the use, possession, and enjoyment" of the rented property applies to this case.

---

[41] The record extract does not contain a transcript of the summary judgment hearing.

[42] We have modified Westminster's articulation of its contentions, largely in order to eliminate acronyms, to correct a few minor grammatical lapses, and to be consistent with the way that we cite Maryland statutes and appellate opinions. We have also reformatted and renumbered them.

4. *Sager v. Housing Comm'n of Anne Arundel County*, 957 F. Supp. 627 (D. Md. 2013) ("*Sager II*")[43], is a public housing case and therefore is wholly inapplicable to a private housing dispute.

5. Appellants lack standing to assert a claim for violation of Real Prop. § 8-208(d)(2) because, unlike the plaintiff in *Sager II*, they have not suffered an "injury in fact" as a result of Westminster's alleged violations.

6. The Real Prop. § 8-208 claims of appellants Mr. Smith, Ms. Smith, and Ms. Sneed are time-barred.

*As a matter of law, appellants cannot establish that Westminster violated the Maryland Consumer Debt Collection Act, Com. Law § 14-201 et seq. because:*

7. Westminster is not a "collector" under Com. Law § 14-201(b) and therefore is not subject to the Maryland Consumer Debt Collection Act.

8. Appellants' Maryland Consumer Debt Collection Act claims improperly challenge the validity of their underlying debt rather than Westminster's method of collection.

9. Appellants' Maryland Consumer Debt Collection Act claims are derivative of their Real Prop. § 8-208 claims and therefore fail as a matter of law.

10. There is no evidence that Westminster "claimed, attempted, or threatened to enforce" its right to collect fees described in appellants' leases with knowledge that it had no right to do so.

*As a matter of law, appellants cannot establish that Westminster violated the Maryland Consumer Protection Act, Com. Law § 13-303(5) because:*

11. The Maryland Consumer Protection Act only applies to alleged unfair or deceptive trade practices that occur at the inception of the lease.

12. To the extent that appellants attempt to subsequently recharacterize their Maryland Consumer Protection Act claims as relating to conduct occurring at lease inception, the claims of appellants Mr. Smith, Ms. Smith, and Ms. Sneed are time-barred.

---

[43] To distinguish it from *Sager v. Housing Comm'n of Anne Arundel County*, 855 F. Supp. 2d 524 (D. Md. 2012). *See* footnote 21, *supra.*

13. To the extent that appellants attempt to subsequently recharacterize their Maryland Consumer Protection Act claims as relating to conduct occurring at lease inception, appellants cannot prove the requisite element of reliance.

14. Appellants' Maryland Consumer Protection Act claims are derivative of appellants' improper Real Prop. § 8-208 claims and therefore fail as a matter of law.

15. To the extent that they are derivative of their Maryland Consumer Debt Collection Act claims, appellants' Maryland Consumer Protection Act claims fail as a matter of law.

*Appellants' breach of contract claim against Westminster fails as a matter of law because:*

16. Appellants did not allege in their Third Amended Complaint that Westminster breached their leases by charging the $80 writ fee.

17. Appellants Howard Smith, Dechonne McBride, and Simone Ryer were never charged an $80 writ fee.

18. Appellants Tenae Smith and Louvinia Sneed have not suffered any damages claimed in their Third Amended Complaint as a result of the $80 writ fee.

19. Plaintiff Dechonne McBride was never charged a $12 agent fee.

20. The $12 agent fee does not constitute a breach of contract under the "Payment of Rent" provision in Appellants' leases.

21. Appellants Tenae Smith and Louvinia Sneed have not suffered any damages claimed in their Third Amended Complaint as a result of the $12 fee.

*All of appellants' claims for monetary damages fail because:*

22. Appellants' claims for damages under Real Prop. § 8-208, the Maryland Consumer Debt Collection Act, the Maryland Consumer Protection Act, and for breach of contract are barred by the doctrine of recoupment.

*Appellants' claims for declaratory and injunctive relief fail because:*

23. Appellants' Real Prop. § 8-208 claims fail as set forth herein, appellants' declaratory and injunctive relief claims also fail as a matter of law.

24. Appellants are not entitled to declaratory relief because other statutory remedies are available.

25. Appellants cannot raise in their Motion for Summary Judgment new requests for declaratory and injunctive relief not previously alleged in their Third Amended Complaint.

*Appellants are not entitled to injunctive relief as a matter of law because:*

26. As former Westminster tenants, appellants Howard Smith, Simone Ryer, and Louvinia Sneed have no standing to seek injunctive relief.

27. Even as current Westminster tenants, appellants Tenae Smith and Dechonne McBride have failed to establish "irreparable injury" as necessary to obtain injunctive relief.

For their part, appellants contend that none of the contentions that are presented by Westminster as to its cross-motion for summary judgment were a valid basis for the circuit court's decision to grant summary judgment in Westminster's favor. By and large, appellants are correct.[44]

A. The Standard of Review

"On review of an order granting summary judgment, our analysis begins with the determination of whether a genuine dispute of material fact exists; only in the absence of such a dispute will we review questions of law. If no genuine dispute of material fact exists, [an appellate court] determines whether the Circuit Court correctly entered summary judgment as a matter of law." *Koste v. Town of Oxford*, 431 Md. 14, 24–25 (2013) (cleaned up).

---

[44] From time to time in their briefs, appellants state in passing that the circuit court erred in denying their motion for summary judgment. This contention is not persuasive. *See, e.g., Webb v. Giant of Maryland, LLC*, 477 Md. 121, 135 (2021) (When there are disputes of material fact, "[a] trial court has . . . discretionary power when affirmatively denying a motion for summary judgment or denying summary judgment in favor of a full hearing on the merits." (cleaned up)).

Appellate courts exercise *de novo* review over a trial court's decision to grant a motion for summary judgment. *Webb v. Giant of Maryland, LLC*, 477 Md. 121, 135, (2021). A Maryland appellate court's "review of the trial court's grant of summary judgment is limited ordinarily to the legal grounds relied upon explicitly in its disposition." *Irwin Indus. Tool Co. v. Pifer*, 478 Md. 645, 682 (2022) (cleaned up). We will affirm the circuit court's judgment "so long as the record discloses that it was correct in so doing." *Id.* at 685 (quoting *Smigelski v. Potomac Ins. Co. of Illinois*, 403 Md. 55, 61 (2008)). The circuit court granted Westminster's motion "for reasons outlined in Defendants' Cross Motion for Summary Judgment . . . and those which it made during argument in open Court" without further explanation. Because the court did not identify which of Westminster's contentions it relied upon, we will assume that it relied on all of them.

### B. Statutory Interpretation

The parties' summary judgment contentions are based in large part on their interpretations of Maryland statutes, primarily title 8, subtitle 2 of the Real Property Article; Real Prop. § 8-401; the Maryland Consumer Protection Act, codified as title 13 of the Commercial Law Article; and the Maryland Consumer Debt Collection Act, codified as Md. Code, Com. Law, §§ 14-201–204.

"A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny. We seek to construe the statute in a way that will advance the

statute's purpose, not frustrate it." *Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 423

(2016) (cleaned up). Accomplishing this:

> requires an examination of the statutory text in context, a review of legislative history to confirm conclusions or resolve questions from that examination, and a consideration of the consequences of alternative readings. Text is the plain language of the relevant provision, typically given its ordinary meaning, viewed in context, considered in light of the whole statute, and generally evaluated for ambiguity. Legislative purpose, either apparent from the text or gathered from external sources, often informs, if not controls, our reading of the statute. An examination of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality.

*Blue v. Prince George's County*, 434 Md. 681, 689 (2013*)* (quoting *Town of Oxford v.*

*Koste*, 204 Md. App. 578, 585–86 (2012), *aff'd*, 431 Md. 14 (2013)).

Real Prop. §§ 8-208 and 8-401, the Maryland Consumer Debt Collection Act, and the

Maryland Consumer Protection Act are remedial statutes. "When a statute provides

remedies not available at common law, the statute is remedial. Once we have determined

that a statute is remedial in nature, it must be liberally construed in order to effectuate its

broad remedial purpose. For similar reasons, exemptions from remedial legislation must

be narrowly construed." *Lockett*, 446 Md. at 424 (cleaned up).

## 5. WESTMINSTER'S REAL PROP. § 8-208 CONTENTIONS

To the circuit court, Westminster argued that appellants' claim that it had violated Real Prop. § 8-802 failed for six reasons. We have already addressed three of them.[45] The remaining ones are:

(1) Appellants' reliance on *Sager v. Housing Comm'n of Anne Arundel County*, 957 F. Supp. 2d 627 (D. Md. 2013) ("*Sager II*") is misplaced because *Sager II* "is a public housing case and therefore is wholly inapplicable to [a] private housing dispute";

(2) Appellants lack standing to assert a claim for violation of Real Prop. § 8-208(d)(2) because, unlike the plaintiff in *Sager*, they have not suffered an "injury in fact" as a result of Westminster's alleged violations; and

(3) The Real Prop. § 8-208 claims of appellants Mr. Smith, Ms. Smith, and Ms. Sneed are time-barred.

---

[45] We have already disposed of Westminster's arguments that:

1. Real Prop. § 8-208 prohibits the inclusion of certain provisions in residential leases, not the conduct of a property manager, therefore Westminster's alleged "charging" and "collecting" of agent fees and summons fees cannot violate Real Prop. § 8-208(d)(3);

2. The "Late Charge" penalty provision in appellants' leases is consistent with—not in violation of—Real Prop. § 8-208(d)(3), and does not include "agent fees" and "summons fees," which are distinct privately contracted-for reimbursable expenses; and

3. The General Assembly has repeatedly refused to extend the holding of *Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 423 (2016)'s definition of "rent" under Real Prop. § 8-208.1 to RP§ 8-401.

We start with Westminster's *Sager II* contentions. That case involved a convoluted dispute between a tenant and her public housing agency landlord. Among the many issues in the case was the propriety of what the Court termed "the allocation clause," which was a provision in the agency's standard lease stating that any payments by the tenant to the landlord which were not specifically designated in writing as "'rent' or 'for rent' [could] be applied at the Landlord's option, as follows: first to outstanding maintenance charges and/or late fees and/or legal fees and secondly to rent." 957 F. Supp 2d at 630. The District Court termed the allocation clause as a "'gotcha' provision that deprives HCAAC tenants of the protection of the law with no identifiable counter balancing benefit to the tenant." *Id.* at 634. Based on this premise, the Court concluded that, in addition to the federal statutory violations:

(1) The allocation clause violated Real Prop. § 8-208(d)(2)[46] because "a rent-paying public housing tenant has an unassailable, not conditional, right to the procedural protections[,]" which includes a tenant's right to remain in her unit as provided by federal law. *Id.* at 635; and

(2) Inclusion of an allocation clause in a lease when the tenant receives federal rental assistance constituted an unfair trade practice under the Maryland Consumer Protection Act. *Id.* at 643.

---

[46] Real Prop. § 8-802(d)(2) prohibits a landlord from including a provision in a lease that
> [h]as the tenant agree to waive or to forego any right or remedy provided by applicable law[.]

In the process of reaching these conclusions, the Court found that:

> the allocation clause operates as a waiver of rights in violation of R.P. § 8–208(d). Under state law a tenant has the right not to be summarily evicted except for failure to pay rent.

*Id.* at 636.

Returning to the case before us, appellants' Maryland Consumer Protection Act damages claim is premised in large part on its assertion that Westminster's practices violated the Maryland Consumer Debt Collection Act and thus constituted a violation of the Maryland Consumer Protection Act.[47] *Sager II* does not address the Maryland Consumer Debt Collection Act.

Appellants also cite *Sager II* in support of their contention that they are entitled to declaratory and injunctive relief to bar Westminster from utilizing the applications-of-

---

[47] *See* Com. Law § 13-301:

> Unfair, abusive, or deceptive trade practices include any:
> $$* \quad * \quad *$$
> (14) Violation of a provision of:
> $$* \quad * \quad *$$
> (iii) Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act[.]

payments provision in its leases[48] in order to file summary ejectment proceedings pursuant to Real Prop. § 8-401 when a tenant pays their fixed monthly charge, but Westminster allocates part or all of that payment to other charges. In our view, the District Court's reasoning in *Sager II* can reasonably be interpreted as supporting appellants' position. However, the *Sager II* holdings are not determinative because the District Court's analysis is based on the unique protections granted to tenants by federal law when they receive federal housing assistance. Appellants do not allege that they received such benefits.

Next, Westminster argues that appellants lack standing to pursue . . . their claim that Westminster's use of the application of payments clause violated § 8-208(d)(2) because in their appellate brief:

> they concede that they seek *only* declaratory/injunctive relief—not actual monetary damages—in connection with their RP § 8-208(d)(2) claim. Absent evidence of "actual damages," Appellants' claim fails as a matter of law.

The fatal flaw with this argument is that its premise is false. There is nothing in appellants' brief that can be interpreted as suggesting that they were not seeking damages

---

[48] Paragraph 32 of Westminster lease states:

> Application of Payments: All payments from Tenant to Landlord may, at Landlord's option, be applied in the following order to debts owed by Tenant to Landlord: late charges, agent's fees, attorney's fees, court costs, obligations other than rent (if any) due Landlord, other past due rent other than monthly rent, past due monthly rent, current monthly rent.

in addition to declaratory and injunctive relief for what they claim is Westminster's improper use of its applications of payment clause.

Westminster's final Real Prop. § 8-802(d) argument is that Ms. Smith, Mr. Smith, and Ms. Sneed's claims for damages are time-barred:

> Appellants allege that certain provisions in their leases violate RP § 8-208(d)(2); however, these three Appellants signed their leases containing the allegedly violative provisions in 2009, 2007/2014, and 2011/2012, respectively—more than three years before they commenced this action against Westminster on September 27, 2017.

Westminster's contention overlooks the fact that the parties entered into new lease agreements each year. Therefore, the leases relevant to appellants' claims were signed within three years of the date that they filed their initial complaint.

### 6. WESTMINSTER'S MARYLAND CONSUMER DEBT COLLECTION ACT CONTENTIONS

In its motion for summary judgment, Westminster argued that appellants' claims that it violated the Maryland Consumer Debt Collection Act fail for four reasons. The first three are:

(1) Westminster is not a "collector" under Com. Law § 14-201(b) and therefore is not subject to the Maryland Consumer Debt Collection Act;

(2) Appellants' Maryland Consumer Debt Collection Act claims improperly challenge the validity of their underlying debt rather than Westminster's method of collection; and

- 55 -

(3) There is no evidence that Westminster "claimed, attempted, or threatened to enforce" its right to collect fees described in Appellants' leases "with knowledge" that it had no right to do so.

We have previously addressed these issues. To reiterate, Westminster is a "collector" for the purposes of the Maryland Consumer Debt Collection Act. *See Carrington Mortg. Servs*. 23 F.4th at 375–76. In *Chavis,* the Court made it clear that: "a plaintiff may invoke § 14-202(8) when the amount claimed by the debt collector includes sums that the debt collector, to its knowledge, does not have the right to collect." 476 Md. at 560. The *Chavis* Court further held that a collector violates the Act when it "claim[s], attempt[s], or threaten[s] to enforce the non-existent right 'with actual knowledge or with reckless disregard as to the falsity of the existence of the right.'" *Id.* at 563. Additionally, the Court held that "whether a debt collector acted recklessly presents a question of fact[.]" *Id.* at 571.

Westminster's final assertion is that appellants' Maryland Consumer Debt Collection Act claims are derivative of their Real Prop. § 8-208 claims and therefore fail as a matter of law. As we have explained, appellants have asserted tenable claims that Westminster violated Real Prop. § 8-208.

## 7. WESTMINSTER'S MARYLAND CONSUMER PROTECTION ACT CONTENTIONS

In its motion for summary judgment, Westminster asserted that appellants' Maryland Consumer Protection Act claim failed for five reasons.[49]

The primary one is that the "Maryland Consumer Protection Act only applies to alleged unfair or deceptive trade practices that occur at the inception of the lease." For the reasons that we have previously explained, Westminster's argument is wrong. The lead paint poisoning cases that Westminster relies upon as support for this contention are irrelevant. One of appellants' Consumer Protection Act claims is based on what they assert were Westminster's violations of the Maryland Consumer Debt Collection Act by

---

[49] The grounds Westminster presented to the circuit court were:

The Maryland Consumer Protection Act only applies to alleged unfair or deceptive trade practices that occur at the inception of the lease.

To the extent [appellants] attempt to subsequently recharacterize their Maryland Consumer Protection Act claims as relating to conduct occurring at lease inception, the claims of . . . Mr. Smith, Ms. Smith, and Ms. Sneed are time-barred.

To the extent [appellants] attempt to subsequently recharacterize their Maryland Consumer Protection Act claims as relating to conduct occurring at lease inception, appellants cannot prove the requisite element of reliance.

[Appellants'] Maryland Consumer Protection Act claims are derivative of [appellants'] improper Real Prop. § 8-208 claims and therefore fail as a matter of law.

To the extent that they are derivative of [appellants'] Maryland Consumer Debt Collection Act claims, [appellants'] Maryland Consumer Protection Act claims fail as a matter of law.

(Formatting altered.)

collecting money from them that Westminster did not have the legal right to collect. These efforts took place long after the initial leases were signed and within the limitations period.

Westminster's second and third grounds are based upon the premise that appellants might "attempt to subsequently recharacterize their Maryland Consumer Protection Act claims as relating to conduct occurring at lease inception[.]" Appellants never made such efforts.

Westminster's last two contentions are premised on the notion that appellants' Maryland Consumer Protection Act claim was derivative of their Real Prop. § 8-208 claims and/or their Maryland Consumer Debt Collection Act claim, both of which (according to Westminster) failed as a matter of law. As we have explained, appellants have pled viable claims that Westminster violated § 8-208 and the Maryland Consumer Debt Collection Act.[50]

_____

[50] In addition, appellants also contended at the circuit court and argue to this Court that Westminster's collection tactics constituted an unfair trade practice in violation of the Maryland Consumer Protection Act, Com. Law § 13-303, that states in pertinent part:

A person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in:
*     *     *
(5) The collection of consumer debts[.]

## 8. WESTMINSTER'S CONTENTIONS REGARDING APPELLANTS' BREACH OF CONTRACT CLAIM

To the circuit court and this Court, Westminster asserts that it was entitled to judgment as a matter of law on appellants' breach of contract claim for six reasons.

### (1)

Westminster argued to the circuit court that appellants did "not allege in their Third Amended Complaint that Westminster breached their leases by charging the $80 writ fee." We do not agree.

In paragraph 51 of the third amended complaint, appellants alleged that "in August and September 2017, Westminster charged Ms. Smith $80 for a "Writ Filing Fee" (even though the actual cost of filing a warrant of restitution at that time was $50 and no court had awarded such a fee)[.]" In paragraph 71, appellants alleged that: "On at least nine occasions since May 2015, [Westminster] charged Ms. Sneed $80 for a "Writ Filing Fee" (even though the actual cost of filing a warrant of restitution at that time was $50 and no court had awarded such a fee)[.]" The relevant breach of contract claim is set out in count 5 of the third amended complaint. It states in pertinent part (emphasis added):

> 142. Defendants utilize standard form leases with Plaintiffs and Class Members that include the following provision (usually numbered paragraph 30): "Should Landlord employ an Agent to institute proceedings for rent and/or repossession of the Premises for non-payment of any installment of rent, and should such rent be due and owing as of the filing of said proceedings, Tenant shall pay to Landlord the reasonable costs incurred by Landlord in utilizing the services of said Agent."
>
> 143. *Nothing in this standard lease entitles Defendants to charge additional fees to its tenants that it has not incurred.*

144. In violation of this standard lease, Defendants, as a matter of policy and practice, have charged and/or subjected to a policy of charging Plaintiffs and Class Members a $12 "agent fee" each time a warrant for restitution is filed, even though Defendants incurred no such fee or charge from their exclusive rent court agent, eWrit, or any other entity.

145. By charging these $12 "agent fees" *and other non-incurred fees to Plaintiffs and Class Members*, Defendants have regularly and repeatedly violated their standardized lease provisions with Plaintiffs and Class Members that authorize such charges only when Defendants actually incur such costs from an agent.

146. Plaintiffs and Class Members seek to recover damages in the amount of any and all fees and costs, *including but not limited to the $12 "agent fees," related to filing for warrants of restitution* . . . that Defendants charged them despite not having incurred those fees or costs, in breach of their lease agreements.

Finally, in the prayers for relief at the conclusion of the complaint, appellants sought (emphasis added):

> judgment in favor of Plaintiffs and Class Members and against Defendants, jointly and severally, *in the amount of all sums paid by Plaintiffs* and Class Members toward improper fees, costs, and other charges[.]

Md. Rule 2-305 states that "[a] pleading that sets forth a claim for relief . . . shall contain a clear statement of the facts necessary to constitute a cause of action and a demand for judgment for the relief sought." The third amended complaint meets this standard with regard to appellants' claim that Westminster breached its contract by charging Ms. Smith and Ms. Sneed $80 to reimburse it for a filing fee of $50.

### (2) and (3)

Before the circuit court, Westminster asserted that it was entitled to summary judgment on appellants' breach of contract claim because Mr. Smith, Ms. McBride, and

Ms. Ryer "were never even charged an $80 writ fee." As a separate contention, Westminster also argued that Ms. McBride was never charged a "$12 agent fee." These contentions are specious.

Appellants alleged that Westminster added $30 to the $50 filing fee when it filed warrants of restitution in the District Court for the City of Baltimore. Mr. Smith, Ms. McBride, and Ms. Ryer did not live in one of Westminster's Baltimore City properties and none of these appellants asserted that they were charged $80 when Westminster filed warrants of restitution against them. Westminster certainly assessed the inflated $80 charge against Ms. Smith and Ms. Sneed, who are the only appellants who resided in Baltimore.

While Westminster may not have charged Ms. McBride a *$12* agent's fee, she has stated under oath that Westminster charged her a *$10* agent's fee on eleven separate occasions beginning in October 2015 and ending in February 2018, and that she paid the fee on each occasion.

(4)

Westminster argues that it was entitled to judgment on the breach of contract claim because imposition of the $12 agent's fee was not a violation of the lease because the "Payment of Rent" provision in its standard lease states in pertinent part:

> Should Landlord employ an Agent to institute proceedings for rent and /or repossession of the Premises for non-payment of any installment of rent, and should such rent be due and owing as of the filing of said proceedings, Tenant shall pay to Landlord the reasonable costs incurred by Landlord in utilizing the services of said Agent.

To the circuit court, Westminster asserted:

> The "Payment of Rent" provision concerns the use of agents specifically "to institute proceedings" for rent and/or repossession. It also addresses the issue of outstanding rent "as of the filing of those proceedings." This language unambiguously and irrefutably focuses on the time period in which Westminster actually "institutes proceedings," i.e., at the time it files failure to pay rent complaints under RP § 8-401. During that time period, and consistent with this provision, Westminster assessed Plaintiffs both a $10 agent fee and summons filing fee, both "reasonable costs incurred by [Westminster] in utilizing the services of said agent," but not the $12 fees. . . . because it is undisputed that Westminster has only ever assessed the $12 fees to some Plaintiffs later in the month in connection with filing writs in ongoing failure to pay rent proceedings, but not earlier in the month when it "institute[s] proceedings," the "Payment of Rent" provision does not even concern the $12 fees. Consequently, as a matter of law, Westminster's assessment of the $12 fees does not constitute a breach of the "Payment of Rent" provision in their leases.

These contentions miss the point. Appellants' breach of contract claim is based in part on their assertion that Westminster charged them agents' fees when, in fact, it employed no agents and eWrit did not charge Westminster anything to file complaints for summary ejectment in the District Court. That Westminster sometimes charged tenants $10 and sometimes $12 to reimburse it for fictitious expenses that it never incurred is irrelevant to everything but the calculation of damages. The times of the month that Westminster entered these charges on its books is simply irrelevant.

### (5) and (6)

Westminster argues that appellants' breach of contract claims fail because Ms. Sneed and Ms. Smith "have not suffered any damages" as a result of the $80 writ fees and the $12 agent's fees that were charged against them. This is so, says Westminster, because it

"refunded" all of the overcharges to them by "credit[ing]" their "account[s]" with Westminster with the amounts of the overcharges. This argument fails because appellants, including Ms. Smith and Ms. Sneed, assert that, in addition to reimbursement for the summons fees and excessive warrant fees that they paid to Westminster in order to avoid eviction, they are also entitled to prejudgment interest on the agent's fees. Westminster contends that appellants are not entitled to prejudgment interest for two reasons.

First, Westminster contends that, in their third amended complaint, appellants requested prejudgment interest only "'on all sums awarded to Plaintiffs[.]' Because they cannot possibly be awarded the fees that Westminster refunded previously, their *ad damnum* clause does not encompass the pre-judgment interest they now seek." Appellants concede that, after they filed their initial complaint, Westminster refunded the improperly charged $12 agent's fees to those parties who were, at the time, still its tenants. However, they assert that Westminster has not refunded fees improperly charged to former tenants, such as Mr. Smith.

Westminster's second contention is appellants' claim for prejudgment interest does not meet the standards for an award of interest *as a matter of right*. Westminster is correct but that is not the end of the story.

In Maryland, there are "three basic rules governing the allowance of pre-judgment interest[.]" *Harford County v. Saks Fifth Ave. Distribution Co.*, 399 Md. 73, 93 (2007) (cleaned up). First, prejudgment interest "is allowable as a matter of right when the obligation to pay and the amount due had become certain, definite, and liquidated by a

specific date prior to judgment[.]" *Id*. Second, prejudgment interest is not allowed "in tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement[.]" *Id*. at 94. The third rule is that "[b]etween these poles of allowance as of right and absolute non-allowance is a broad category of contract cases in which the allowance of pre-judgment interest is within the discretion of the trier of fact." *Id.* Appellants' claim for prejudgment interest falls into the third category. Whether they prevail on their claim for prejudgment interest is a matter for the trier-of-fact.

### 9. WESTMINSTER'S RECOUPMENT ARGUMENT

"A 'recoupment' is 'a diminution or a complete counterbalancing of the adversary's claim [for monetary damages] based upon circumstances arising out of the same transaction on which the adversary's claim is based[.]'" *Pines Plaza Ltd. P'ship v. Berkley Trace, LLC*, 431 Md. 652, 675 n.22 (2013) (quoting *Imbesi v. Carpenter Realty Corp.*, 357 Md. 375, 380 (2000)). "Recoupment is an equitable doctrine with its own unique characteristics: it must arise out of the same transaction that is the subject matter of the plaintiff's action and it can only be used to reduce or avoid the plaintiff's recovery." *Imbesi*, 357 Md. at 375 (quoting *Minex Resources, Inc. v. Morland*, 467 N.W.2d 691, 699 (N.D.1991)).

To the circuit court and to this Court, Westminster asserts that it is entitled to judgment in its favor as to appellants' claims for damages because it has claims in recoupment against Ms. Smith, Ms. Sneed, Mr. Smith, and Ms. Ryer. According to Westminster, each of these parties owes Westminster more than they are asking in

damages in the third amended complaint. Additionally, according to Westminster, its recoupment claims foreclosed not only the possibility that appellants (other than Ms. McBride) could recover on their breach of contract count, but also the possibility that any of the appellants (other than Ms. McBride) could recover any damages in their claims under Real Prop. § 8-208, the Maryland Consumer Debt Collection Act, and the Maryland Consumer Protection Act.[51]

The first step in reviewing a circuit court's grant of a motion for summary judgment is to determine "whether a genuine dispute of material fact exists[.]" *Koste v. Town of Oxford*, 431 Md. 14, 24–25 (2013) (cleaned up).

The evidentiary basis for Westminster's recoupment argument is extremely meager. It is based almost entirely on what Westminster describes as "undisputed evidence" in the form of entries in its bookkeeping system, which show that:

> Plaintiffs owe more money to Westminster resulting from their repeated breaches of lease than they even claim through this action. In fact, Plaintiffs acknowledge Westminster's view of this, pointing to the fact that "based on their respective ledgers in this matter, Westminster is likely to seek collection" of Plaintiffs' outstanding debts.[52]

---

[51] Westminster states that appellants failed to address its recoupment argument in their opening brief. We don't agree. Although appellants did not use the term "recoupment," they made it clear that it was their position that the circuit court erred in granting summary judgment on all of the grounds asserted by Westminster. Additionally, they made it equally clear that Westminster owes them money, a proposition that is completely at odds with Westminster's recoupment argument.

[52] According to Westminster, its ledgers demonstrated that: Ms. Smith claimed $1,104.91 in damages but owed Westminster $2,142.64; Ms. Ryer claimed damages of $103.47 but owed Westminster $2,017.25; Ms. Sneed's damage claim was $2,059.41 but

(Cleaned up).

Its ledger evidence is undisputed, according to Westminster, because appellants effectively conceded the accuracy of Westminster's ledger entries by relying on them in quantifying the damages owed by Westminster to them according to their theory of the case.

Appellants disagreed. They pointed out that Westminster's recoupment claim (other than as to Mr. Smith[53]) was based solely on information in its own ledgers and that, in their summary judgment affidavits, they:

> acknowledged only that their ledgers accurately reflect the charges, payments, and credits to their account[s] from Westminster. No Appellant ever agreed that Westminster's ledger charges were valid—to the contrary, this suit challenges the legitimacy of many of Westminster's charges.

(Cleaned up).

The appellants, and not Westminster, accurately characterize the substance of the affidavits. Therefore, there is a dispute of material fact as to whether the sums

---

she owed $2,261.25 to Westminster; and Mr. Smith's damage claim was $349.49 and he owed Westminster $9,053.

[53] Westminster's recoupment argument to the circuit court as to Mr. Smith was a bit different because it was supplemented by an affidavit describing the circumstances that led to his vacating his unit. To the circuit court, appellants asserted that the affidavit was defective because it did not describe "the steps Westminster took to mitigate the alleged damages resulting from Mr. Smith's early termination of his occupancy[.]" Appellants point to Real Prop. § 8-207(a)(3), which provides that, when a residential lease is breached, the aggrieved party "has a duty to mitigate damages." We need not resolve this issue because appellants did not agree that Mr. Smith owes Westminster $9,053 as Westminster claims.

Westminster claims that each appellant (other than Ms. McBride) owes it were actually incurred. To the extent that the circuit court relied on Westminster's recoupment argument (and we must assume that it did), the court erred.

In its brief to this Court, Westminster asserts that "the equitable and legal principles underlying the doctrine of recoupment establish, as a matter of law, that [appellants] cannot prevail" on any of their claims for damages. Westminster's belief that it has an untrammeled right to assert its recoupment claim is not correct. If Westminster renews its recoupment contention on remand, we provide the following as guidance to the court and the parties:

"[T]he equitable doctrine of recoupment is not a precisely defined one[.]" *TIFD III-X LLC v. Fruehauf Prod. Co*., 883 A.2d 854, 859 (Del. Ch. 2004). The doctrinal interstices are often filled by reference to principles of equity. One such principle is that the party seeking recoupment bears the burden of establishing its entitlement to the remedy. *Brosius Dev. Corp. v. City of Hagerstown*, 237 Md. 374, 383 (1965); *Slaska v. Idzi*, 186 Md. 530, 534 (1946). Another equitable principle is that the remedy of recoupment "cannot be invoked by a party who lacks 'clean hands.'" *Minskoff v. United States*, 349 F. Supp. 1146, 1150 (S.D.N.Y. 1972) *aff'd*, 490 F.2d 1283 (2d Cir. 1974). The clean hands doctrine "is designed to prevent the court from assisting in fraud or other inequitable conduct." *Mona v. Mona Elec. Grp., Inc*., 176 Md. App. 672, 714 (2007) (cleaned up). For a party to have "unclean hands," its conduct "need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress

equitable standards of conduct is sufficient cause for the invocation of the maxim."

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co*., 324 U.S. 806, 815 (1945).

### 10. WESTMINSTER'S CONTENTIONS REGARDING APPELLANTS' REQUESTS FOR DECLARATORY AND INJUNCTIVE RELIEF

In the third amended complaint, appellants sought a declaratory judgment that:

> Defendants may not collect from Plaintiffs or any Class Member any late fees, unawarded court fees, or agent fees in excess of 5% of the amount of rent due for any rental period[54] for which the payment was delinquent; [and]

> that Defendants may charge only the fixed, periodic sum due from Plaintiffs and Class Members as "rent," may not define "rent" to include any other charges or fees, and may not allocate Plaintiffs' and Class Members' payments first to non-rent obligations or fees[.]

We start from the premise that courts should "declare the rights of the parties when presented with an action properly susceptible to a declaratory judgment." *Hanover Invs., Inc. v. Volkman*, 455 Md. 1, 16–18 (2017) (quoting *Post v. Bregman*, 349 Md. 142, 159–60 (1998). To the circuit court and this Court, Westminster presents seven reasons why declaratory or injunctive relief is inappropriate in the present case. None are persuasive.

(1)

---

[54] In the early stages of this litigation, appellants contended that the Real Prop. § 8-208(d)(3)(i), which prohibits landlords from including in a lease that provides for a penalty fee "in excess of 5% of the amount of rent due for the rental period for which the payment was delinquent" meant that landlords could not impose a late charge in excess of 5% of "net rent due" for the month in which the penalty was imposed. Appellants do not make this assertion on appeal.

Westminster contends that, because appellants' Real Prop. § 8-208 claims failed, their declaratory and injunctive relief claims also failed as a matter of law. Westminster's premise is wrong because, as we have previously explained, appellants have alleged viable claims that Westminster violated § 8-208 in a variety of ways.

(2)

To the circuit court, Westminster argued that appellants "are not entitled to declaratory relief because other statutory remedies are available[.]" Westminster pointed to a provision of the Maryland Uniform Declaratory Judgment Act, specifically, Courts & Jud. Proc. § 3-409(b), which states: "If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle." Westminster continued:

> Critically, however, RP § 8-208(g)(2) provides a special statutory remedy for Westminster's alleged violations of RP § 8-208, which Plaintiffs allege and actually demand in Plaintiffs' request for declaratory relief also fails because Plaintiffs are precluded from such relief under the Declaratory Judgment Act where, as here, separate statutory remedies are available.

This contention is meritless. As appellants noted in their response to Westminster's motion for summary judgment, the purpose and effect of the relevant provision of the Declaratory Judgment Act, namely, Courts & Jud. Proc. § 3-409(b), is to prevent courts from entering declaratory judgments in matters where the General Assembly has provided administrative remedies that are exclusive or primary or where the dispute is

- 69 -

pending in another forum that has jurisdiction over the matter.[55] *See, e.g.*, *Hanover Invs., Inc. v. Volkman*, 455 Md. 1, 28 (2017) (holding that the circuit court should not have issued a declaratory judgment when there was a previously-filed and still pending action between the same parties in another state in which the same issue was raised); *Vargas-Aguila v. State, Office of Chief Med. Exam'r*, 202 Md. App. 375, 379–80 (2011) (holding that a circuit court erred in issuing a declaratory judgment to resolve an evidentiary issue raised in a pending district court criminal case); *Reiling v. Comptroller of Md.*, 201 Md. 384, 389 (1953) (holding that a declaratory judgment action was inappropriate when a statute provided an exclusive administrative remedy); and *Soc'y of Am. Foresters v. Renewable Nat. Res. Found.*, 114 Md. App. 224, 239 (1997) (holding that the circuit court did not err in dismissing a declaratory judgment action when the same issue was raised in a pending arbitration proceeding).

### (3) and (4)

In their motion for summary judgment, appellants sought a declaration that "[a]ny provisions in Westminster's respective leases with Plaintiffs, including paragraphs 8 and

---

[55] The two cases relied upon by Westminster in the circuit court were: *Hanover Invs., Inc. v. Volkman*, 455 Md. 1, 28 (2017) and *Vargas-Aguila v. State, Office of Chief Med. Exam'r*, 202 Md. App. 375, 379–80 (2011). As explained in the main text, neither case provides any support for Westminster's position.

32,[56] that conflict with this declaratory judgment are void." Westminster asserted that appellants made "no such request" in the third amended complaint, and that it was therefore inappropriate for the circuit court to issue a declaratory judgment to that effect.

In response, appellants pointed out that, in the third amended complaint, they asked for a declaration that "Westminster 'is not entitled to the assistance of any Maryland Court in enforcing improper or illegal late fees,'" and that the language in their summary judgment motion was "merely a different and more specific way of phrasing [their] request" for declaratory relief. We agree with appellants and Westminster does not pursue this contention on appeal.

Westminster raised the same contention regarding appellants' request for injunctive relief. It is equally unpersuasive.

(5)

In its brief to this Court, Westminster contends that appellants' requests for declaratory relief are moot because there is no longer a justiciable issue between the

_____

[56] Westminster's standard lease states in pertinent part:

> 8. Definition of Rent: All payments from Tenant to Landlord required under the terms of this Lease, including, but not limited to, [c]ourt costs, shall be deemed rent.
>
> \*    \*    \*
>
> 32. Application of Payments: All payments from Tenant to Landlord may, at Landlord's option, be applied in the following order to debts owed by Tenant to Landlord: late charges, agent's fees, attorney's fees, court costs, obligations other than rent (if any) due Landlord, other past due rent other than monthly rent, past due monthly rent, current monthly rent.

parties because "[a]ppellants, whose leases have all expired . . . are no longer subject to the fees assessed by Westminster." Appellants posit two reasons why declaratory relief is nonetheless appropriate.

The first is that the case is not moot. This is so, say appellants, because "Westminster continues to claim that Ms. Sneed, Mr. Smith, and Ms. Ryer owe it money" even though they are no longer tenants.[57] Appellants are correct. *See Stevan v. Brown*, 54 Md. App. 235, 249 (1983) ("Landlords also argue that this case is moot because pending the suit the lease terminated. This is not persuasive. There is still 'an actual controversy . . . between contending parties' regarding liability for damages which can be terminated" by a [declaratory judgment].") (Citation omitted.)

Appellants' second contention is that, even if the case were moot, this Court "should nonetheless address them because they raise "unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct," and the issues presented are "capable of repetition, yet evading review." (quoting *Stevenson v. Lanham,* 127 Md. App. 597, 612–13 (1999). They explain:

> This case presents an issue of public importance to thousands of tenants (and their landlords)—not only does Westminster manage 21 properties in Maryland with more than 9,000 units, but other large landlords in Maryland similarly impose lease terms that allow them to charge excessive late fees and deem them "rent." Declaratory and injunctive relief is appropriate where it will benefit such individuals, even if they are not plaintiffs or members of a formally certified class.

---

[57] Actually, it is Westminster's position that all of the appellants (other than Ms. McBride) owe it money. This is the basis of Westminster's recoupment claim.

> In addition, since most leases have a one-year term and Westminster's late-fee practices are prevalent across the industry, the issues presented here are also likely to recur but evade appellate review.

(Cleaned up.)

The legal principles are certainly correct. *See, e.g., Arrington v. Dep't of Hum. Res.*, 402 Md. 79, 91–92 (2007); *Sanchez v. Potomac Abatement, Inc.*, 198 Md. App. 436, 445 (2011), *aff'd*, 424 Md. 701 (2012). Moreover, we have no quarrel with the cogency of appellants' contention as to the wider public importance of some of the issues raised in this appeal. Were it necessary for us to reach the issue, we might agree with appellants. However, this case is not moot.

(6)

At the circuit court level, Westminster asserted that Mr. Smith, Ms. Ryer, Ms. Sneed, and Ms. McBride have no standing to seek injunctive relief because they are no longer tenants of Westminster. (As an exhibit to its motion, Westminster provided documentary evidence that Ms. McBride had given notice to Westminster that she did not intend to renew her lease, which expired on December 17, 2019.) In the circuit court, appellants conceded that Mr. Smith, Ms. Ryer, and Ms. Sneed did not have standing but argued that Ms. McBride did because she was a tenant of Westminster's at the time the parties filed their motions for summary judgment. But appellants did not argue that Ms. McBride was planning to stay in her apartment for an extended period.

This leaves Ms. Smith. In its brief to this Court, Westminster's sole contention is that Ms. Smith no longer has standing because she is no longer its tenant. Westminster points to no evidence in the record in support of this assertion. We are reviewing the circuit

- 73 -

court's grant of Westminster's motion for summary judgment and in that motion, Westminster explicitly stated that Ms. Smith was its tenant.[58]

(7)

Westminster next argues that appellants failed to establish the threat of an "irreparable injury," which is necessary to obtain injunctive relief. *El Bey v. Moorish Sci. Temple of Am., Inc.*, 362 Md. 339, 355–56 (2001) ("Injunctive relief normally will not be granted unless the petitioner demonstrates that it will sustain substantial and irreparable injury as a result of the alleged wrongful conduct.") However, as the *El Bey* Court explained, to be "irreparable," an injury:

> need not be beyond all possibility of compensation in damages, nor need it be very great. Rather, irreparable injury is suffered whenever monetary damages are difficult to ascertain or are otherwise inadequate. An injury may be said to be irreparable when it cannot be measured by any known pecuniary standard.

*Id.* at 355 (cleaned up).

The appellants summarized the affidavits of Ms. Smith and Ms. McBride as follows:

> Westminster's rent and fee practices—charging agent and summons fees in addition to late fees, describing all fees as "rent," allocating rent payments to other fees first, and threatening eviction for failure to pay not only rent but the various other fees charged—have taken a severe emotional toll on Ms. Smith and Ms. McBride. A difference of $30 or $40 per month in "rent" charges for these plaintiffs can mean the difference in paying for gas to get to work or for educational and extracurricular expenses for their children. Both plaintiffs have experienced anxiety as a result of Westminster's unlawful acts and have suffered great stress at the thought of

---

[58] Nothing prevents Westminster from pursuing its standing argument on remand.

their families being evicted unless they pay the full balance on their accounts.

The appellants' summary of the affidavits is accurate. Emotional stress, fear of eviction, and parents being forced to delay or deprive their children of educational and extracurricular opportunities in order to avoid eviction are paradigmatic examples of injuries for which "monetary damages are difficult to ascertain or are otherwise inadequate."

Finally, to this Court, and without citing to anything, Westminster asserts that appellants "acknowledged they lack standing to pursue a claim for injunctive relief following the termination of their tenancies[.]" We read appellants' brief differently (emphasis added):

> Appellants requested that the circuit court declare under the leases and Maryland law that Westminster is not entitled to charge or collect the illegal or excessive fees and that the paragraphs in Westminster's standard lease defining "rent" as all charges and misallocating payments are unenforceable.

> Although, after three years of litigation, the last of the Appellants moved out of Westminster's apartments at the end of June 2020, *Westminster continues to claim that Ms. Sneed, Mr. Smith, and Ms. Ryer owe it money.* A declaration of their rights *and an injunction* to require that Westminster credit their accounts for the improperly charged amounts will thus benefit them.

Whether to grant injunctive relief is a discretionary decision by the trial court. *100 Harborview Drive Condo. Council of Unit Owners v. Clark*, 224 Md. App. 13, 63 (2015). To the extent that the circuit court denied appellants' request for injunctive relief on the

basis that they had failed to demonstrate substantial and irreparable injury, the court erred.

In conclusion, the arguments raised by Westminster at the circuit court and to this Court regarding appellants' requests for declaratory and injunctive relief are not persuasive. The circuit court erred in granting summary judgment to Westminster on these requests for relief.

## 11. THE MOTIONS FOR CLASS ACTION CERTIFICATION

The requirements for obtaining class action certification are set out in Md. Rule 2-231, which is based on Federal Rule of Civil Procedure 23. The Maryland rule states in pertinent part (emphasis added):

> (b) Prerequisites to a Class Action. One or more members of a plaintiff class may sue as representative parties on behalf of all only if (1) the class is so *numerou*s that joinder of all members is impracticable, (2) there are questions of law or fact *common* to the class, (3) the claims of the representative parties are *typical* of the claims of the class, and (4) the representative parties *will fairly and adequately protect* the interests of the class.[59]
>
> (c) Class Actions Maintainable. Unless justice requires otherwise, an action may be maintained as a class action if the prerequisites of section (b) are satisfied, and in addition:

---

[59] In interpreting the FRCP Rule 23(a) (the federal counterpart to Rule 2-231(b)), the United States Supreme Court explained that "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (cleaned up).

(1) the prosecution of separate actions by individual members of the class would create a risk of (A) *inconsistent or varying adjudications* with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or (B) *adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties* to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

\* \* \*

The four requisites in subsection (b) of the rule are referred to as the "numerosity," "commonality," "typicality," and "adequate representation" requirements. The standards in subsection (c)(1) and (2) are collectively referred to as the "superiority" requirement, and the standard in subsection (c)(3) is termed the "predominance" requirement. These are all terms of art with well-established meanings. *See* 1 William Rubenstein, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS §§ 3:11–4.26 (6th ed.) ("NEWBERG") (analyzing criteria for each requirement). Additionally, "courts have grafted on to [FRCP 23] two additional criteria, often referred to as the 'implicit requirements' of class certification: that the class be 'definite' or 'ascertainable' and that the class representative be a member of the class." 1 NEWBERG § 3:1 (footnotes omitted).

Thus, in order to obtain class certification: *first*, a party must propose a class whose members are ascertainable through the application of definite standards; *second*, the party must be a member of the proposed class; *third*, the proposed class must satisfy all of the requirements for numerosity, commonality, and typicality contained in Md. Rule 2-231(b)(1), (b)(2), and (b)(3); *fourth*, the class representatives must demonstrate that they will fairly and adequately protect the interests of the class as required by Rule 2-231(b)(4); and *fifth*, the legal and factual issues raised by the underlying causes of action must satisfy at least one of the superiority and predominance requirements set out in subsection (c) of Rule 2-231. With this as background, we turn to what happened at the circuit court.

On November 11, 2018, Mr. Smith and Ms. Smith filed a motion for class action certification and related relief. Before the court ruled on the motion, Mr. Smith and Ms. Smith, now joined by Ms. Ryer, Ms. McBride, and Ms. Sneed, filed their second amended complaint.

The second amended complaint alleged that Ms. Ryer and Ms. McBride were residents of the Whispering Woods Townhomes in Baltimore County, which was owned by Whispering Woods #299 Limited Partnership, and Whispering Woods #250, LLC; and that Ms. Sneed was a resident at Pleasantview Townhomes in Baltimore City, which was owned by Pleasantview, LLC. The defendants named in the complaint were Westminster and the owners of the apartment and townhouse properties where the plaintiffs resided, *i.e.*, Carroll Park Holdings, LLC, Dutch Village, LLC, Pleasantview, LLC, Whispering Woods #299 Limited Partnership, and Whispering Woods #250

Limited Partnership. Appellants alleged that Westminster was the property manager for each development.

The second amended complaint contained seven counts, setting out the following claims with each count directed to all the defendants:

1. damages for the defendants' alleged violations of Real Prop. § 8-208;

2. damages for the defendants' alleged violations of the Maryland Consumer Debt Collection Act by:

(a) attempting to enforce a right with knowledge that the right does not exist, in violation of Com. Law § 14-202(8); and

(b) communicating with debtors "with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor" in violation of Com. Law § 14-202(8);

3. damages for the defendants' alleged violations of the Maryland Consumer Protection Act by:

(a) engaging in unfair and deceptive trade practices (in violation of Com. Law § 13-303(6)), and

(b) violating the Maryland Consumer Debt Collection Act, which is a *per se* violation of the Maryland Consumer Protection Act, *see* Com. Law § 13-301(14(iii);

4. unjust enrichment and restitution claims against each defendant;

5. damages for breach of contract by improperly charging the 5% late fee and other fees;

6. a separate breach of contract claim regarding charging the $12 agent's fee; and

7. declaratory and injunctive relief.

Appellants filed a revised motion for class certification. In the motion, they sought certification of "a class to include each Westminster tenant harmed by defendants' violations." The appellants' motion was directed at Westminster Management and JK2 only. They proposed the following class definition (emphasis added):

All persons who are or were tenants in a residential rental property in Maryland managed by Westminster and/or JK2 Westminster and who, since September 27, 2014, *have been charged fees* by Westminster and/or JK2 Westminster related to the alleged late payment or non-payment of rent (other than a late fee of no more than 5% of the amount of rent due for the period for which the payment was delinquent, and/or actual costs awarded by a court).

Excluded from the class are

(a) those individuals who now are or have ever been executives of defendants and the spouses, parents, siblings, and children of all such individuals; and

(b) any individual who was granted a discharge pursuant to the United States Bankruptcy Code or state receivership laws after the date of all such improper fees charged to that individual or misallocations of payments from him or her.

In addition, and critical to the circuit court's disposition of the motion, appellants asserted:

After filing suit, 39 current or former Westminster tenants in addition to the named plaintiffs contacted plaintiffs' counsel. These *current and former Westminster tenants live or have lived in seven Westminster properties in addition to the four properties where the named plaintiffs live or have lived*: Carriage Hill, Charlesmont, The Commons at White Marsh, Essex Park, Gwynn Oaks Landing, Highland Village, and Morningside Park. . . . In addition, 23 of the individuals . . . provided documentation indicating that, like the named plaintiffs, they [had been] charged court fees or "summons fees" (before any court had awarded such fees) and agent fees for alleged late payment of rent, in addition to the 5% late fee authorized by Maryland law.

(Citations to the circuit court record omitted; emphasis added.)

On April 23, 2019, and after a hearing, the circuit court issued a memorandum opinion and order that denied the revised motion for class certification.[60] The court began its analysis by noting that, in order to obtain class certification, "a proposed class may be certified only if it satisfies all four requirements" of Rule 2-231(b) and at least one of the three requirements of Rule 2-23l(c). As a threshold matter, the court stated that it agreed with Westminster that appellants' proposed class definition was unworkable because there were disconnects between the class defendants (Westminster Management and JK2), the other named defendants, and the assertion in the amended motion for class certification that residents of seven additional properties managed by Westminster[61] claimed to have been charged the fees that appellants assert were illegal. The court additionally concluded that:

(1) There would have to be a series of "mini trials" to determine whether tenants of the additional rental properties would be included in the class.

(2) The definition of the proposed class was "problematic" because the class was defined "as persons who are simply assessed these charges," as opposed to those who actually paid the assessed charges.

---

[60] Effective June 1, 2019, Md. Rule 2-321 was revised in ways that did not change the parts of the rule relevant to this case. Our citations are to the current version of the rule.

[61] The properties were identified in the amended motion for class certification as Carriage Hill, Charlesmont, The Commons at White Marsh, Essex Park, Gwynn Oaks Landing, Highland Village, and Morningside Park.

(3) Appellants' proposed class definition would require inquiries into whether the fees identified were charged in other types of cases (breach of contract, tenant holding over, etc.)"; as well as inquiries into whether and when the fees were charged but also whether they were paid; and inquiries into whether the fees were uniformly charged in all the additional properties identified in the amended motion for class certification.

(4) Appellants' unjust enrichment claim was problematic because "'the measure of damages for unjust enrichment is the known gain to the Defendant.' This evaluation would require individual assessments of whether or not any benefit was conferred and accepted, retained or even known to the Defendant. Generalized evidence does not exist in this case to prove or disprove the elements of unjust enrichment on a class-wide basis." (quoting *Cutler v. Wal-Mart Stores, Inc.*, 175 Md. App. 177, 196 (2007).[62]

---

[62] The circuit court's reliance on *Cutler* for the proposition that the "known gain" to Westminster could only be determined on a case-by-case basis was misplaced.

The gravamen of the appellants' claim in *Cutler* was that Wal-Mart employees were often required to work "off the clock," that is, work through prescheduled break times and mealtimes, and that their "supervisors regularly used their power to adjust time records in a manner that deprived employees of pay for hours actually worked and compensation for missed breaks." 175 Md. at 185. The circuit court concluded that "the measure of damages for unjust enrichment is the known gain to the defendant," and that "evaluation would require individual assessments of whether or not any benefit was conferred and accepted, retained, or even known to Wal–Mart." *Id.* at 186. This Court agreed with that aspect of the circuit court's reasoning. *Id.* at 195–99.

The facts in the present case are different. In *Cutler,* the benefit to Wal-Mart was what it would have paid each employee if they worked through lunch and break times and if their supervisors had not manipulated the employee's time records. This would necessarily vary as to each employee, what occurred on a given day, and whether the employee's supervisor changed the employee's time records for that day. In the present

(5) Appellants' request for consequential damages was equally problematic because the proof of such damages is "not simplistic and cannot be calculated on a class-wide basis."

(6) Although appellants satisfied the "numerosity" and "commonality" requirements of Rule 2-231(b)(1) and (2), appellants failed to satisfy the "typicality" requirement of subsection (b)(3) of the rule.

(7) Turning to Rule 2-231(b)(4)'s requirement that appellants demonstrate that they "will fairly and adequately protect the interests of the class, the court stated that, because appellants failed to satisfy the requirement of typicality, they would have "no incentive to pursue the claims of the other class members." (citing 1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 3:32 at 275.) Therefore, appellants failed to demonstrate that they would adequately represent the class.

The circuit court also addressed subsection (c) of the rule. The court concluded that the problems that it had identified with regard to proof of damages would "overwhelm the common questions presented in this case." Therefore, appellants failed to demonstrate

---

case, the alleged benefit to Westminster was the amount that it received when tenants paid the agent's fees, summons fees, and inflated warrant fees that Westminster charged its tenants who were late in paying their rent. The amounts of the fees were fixed and Westminster certainly knew when a tenant paid them.

The disconnect between the circuit court's reasoning and the factual basis of appellants' unjust enrichment claim is relevant to our instructions to the court on remand.

that a class action was "superior" to other modes of resolving the claims asserted by plaintiffs. Md. Rule 2-321(c)(3).

After the circuit court issued its order denying the motion for class certification, appellants filed the third amended complaint together with their second motion for class certification. In the complaint, appellants: eliminated their claim for consequential damages; eliminated their unjust enrichment/restitution claim; eliminated all defendants other than Westminster; and narrowed the scope of their Maryland Consumer Debt Collection Act claim by eliminating one theory of recovery.[63] Additionally, they asserted the circuit could certify the class pursuant to Rule 2-231(b)(2) for injunctive and declaratory relief "if the Court does not certify the class pursuant to Rule 2-231(b)(3)[.]" Appellants defined the proposed class as (emphasis added):

> All persons who are or were tenants in a residential rental property in Maryland managed by Westminster and/or JK2 Westminster, and who, since September 27, 2014, have (a) *been charged* by Westminster and/or JK2 Westminster one or more of the following fees related to the alleged late payment or non-payment of rent: agent fee, summons fee, writ fee, warrant fee, legal fee, court fee, and/or filing fee (collectively, the "disputed fees"), *and* (b) *paid any such fees* to Westminster and/or JK2 Westminster.
>
> Excluded from the Class are:
>
> *   *   *
>
> c. any individual who has received housing assistance certificates or vouchers issued under the United States Housing Act of 1937 (known as Housing Choice Vouchers or "Section 8" vouchers) at all times since

---

[63] Specifically, appellants eliminated their claim that Westminster had violated the Maryland Consumer Debt Collection Act by communicating with tenants or persons related to them "with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor[.]" Com. Law § 14-202(6).

September 27, 2014, when that individual was charged any such disputed fees;[64] and

d. any individual who has released the Defendants from all claims or potential claims pursuant to a settlement or other release.

Appellants also requested that the circuit court hold a *de novo* hearing on its second motion for class certification. In an order dated July 29, 2019, and without holding a hearing, the circuit court denied the motion. The court explained that, from its perspective:

> No compelling reasons exist for a *de novo hearing* or a reconsideration based on Plaintiffs' claim of newly discovered evidence and the filing of the Third Amended Complaint. Plaintiffs' request to have a de novo hearing is a request to have the court reconsider its April 22, 2019 order . . . . This Court finds that Plaintiffs' request is absent any materially changed or clarified circumstances to support a reconsideration. Plaintiffs failed to show a significant, unexpected change in the facts or the law[.]
>
> Plaintiffs' Third Amended Complaint does not materially change the circumstances of the case to convince the court to reconsider or alter and amend its April 22, 2019 order.

Maryland appellate courts exercise *de novo* review to determine whether the circuit court applied the correct legal standard in granting or denying a motion for class certification. *Creveling v. Government Employees Insurance Co.*, 376 Md. 72, 90 (2003); *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 726 (2000). But we review the ultimate

---

[64] This exclusion addressed a concern previously raised by Westminster, namely, that federal law prohibited landlords from imposing penalties for late rent payments on tenants who receive federal rent assistance.

decision to grant or to deny a class certification motion for abuse of discretion. *Creveling*, 376 Md. at 90. As this Court has explained:

> We must affirm the circuit court's decision unless we can conclude no reasonable person would take the view adopted by the trial court, or that the court acted without reference to any guiding rules or principles. The circuit court's decision must be violative of fact and logic to warrant reversal. This deferential posture appropriately recognizes the factual nature of a class certification inquiry and a trial court's power to manage its docket.

*Silver v. Greater Baltimore Medical Center*, 248 Md. App. 666, 690–91 (2020) (cleaned up).

We do not agree with the circuit court that appellants' second motion for class action certification was merely a request that the court reconsider its prior decision. As we have explained, appellants made several changes to the way that they framed their causes of action and their proposed class definition to address several of the concerns identified by the circuit court in its prior decision. To the extent that the circuit court viewed the second motion for class certification as simply a motion for reconsideration, the court erred. That the court's basis for denying the second motion for class certification was misplaced is one thing. Whether the changes were sufficient to warrant granting the motion to certify is a different question.

In *Chavis*, the Supreme Court of Maryland considered a very similar problem with regard to a companion case, *Moore v. Peak Management LLC*.[65] One issue in *Moore* was

---

[65] The two cases were consolidated by this Court at the intermediate appellate level. 476 Md. at 542.

whether the circuit court erred in denying Ms. Moore's motion for class certification. The circuit court denied the motion on the basis that "'unjust enrichment cannot be determined on a class wide basis' because individualized inquiries would need to be made to determine whether 'any benefit was conferred and accepted, retained or even known to the Defendant.'" *Id.* at 579. Additionally, in *Moore,* the circuit court rejected Ms. Moore's contentions that Peak's conduct violated the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act. *Id.* In *Chavis*, our Supreme Court concluded that Ms. Moore had asserted viable claims under both statutes. The Court directed that:

> upon remand, Petitioners shall be permitted to file a new motion for class certification. If Petitioners file a new motion for class certification, the circuit court shall deem it an initial motion for class certification under Rule 2-231, and shall grant a request for a hearing on the motion if any party requests such a hearing. *See* Md. Rule 2-231(d). We express no opinion concerning how the circuit court should rule on a new motion for class certification.

479 Md. at 579.

In the present case, we have concluded that appellants presented viable claims pursuant to Real Prop. § 8-208 as well as viable claims for breach of contract, violations of the Maryland Consumer Debt Collection Act, and violations of the Maryland Consumer Protection Act. Thus, just as in *Chavis*, the legal landscape confronting the circuit court has changed significantly. Additionally, and for the reasons that we have explained in footnote 62, resolving appellants' unjust enrichment claim on a class basis poses none of the proof problems that were present in *Cutler v. Wal-Mart.* For these

reasons, and consistent with the approach taken by the Court in *Chavis*, appellants may file a new motion for class certification on remand. If they do so, the circuit court shall treat it as an initial motion for class certification and shall hold a hearing on the motion if any party requests one.

In conclusion, we hold that the circuit court erred when it granted Westminster's motion for summary judgment and when it denied appellants' second motion for class action certification for the reasons articulated by the court. We reverse the judgment of the circuit court and remand this case for further proceedings consistent with this opinion.

**THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS REVERSED. THIS CASE IS REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**APPELLEES TO PAY COSTS.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/2508s19cn.pdf